A91A0532. SMITH et al. v. NORTH FULTON MEDICAL CENTER.
(408 SE2d 468)

McMURRAY, Presiding Judge.

Addie Smith (plaintiff) brought an action against North Fulton Medical Center (defendant), seeking damages for injuries she alleg-

edly sustained while a patient at defendant's hospital.[1] Plaintiff alleged that she was injured when she fell from her hospital bed; that "[b]oth rails of the bed were improperly positioned . . . at the time of the fall[; that] Defendant was charged with the duty of using due and proper care in . . . diagnosing, treating, caring and attending [plaintiff and that, contrary] to this duty, Defendant by and through its agents and/or employees was negligent in the care and supervision which [it] rendered to Plaintiff. . . ."

Defendant denied the material allegations of the complaint and defended on the ground that plaintiff failed to file an expert's affidavit supporting any claim of nursing malpractice. Defendant subsequently filed an OCGA § 9-11-9.1 motion to dismiss and a motion for summary judgment with supporting evidence, challenging any claims of negligence and nursing malpractice. Plaintiff responded with a brief and argued that an expert affidavit is not necessary because her complaint is for "ordinary negligence." Plaintiff also filed an amended complaint for professional malpractice and included the affidavit of a registered nurse who deposed that defendant's nursing staff deviated from the requisite standard of care in watching over plaintiff at the time of the alleged fall.

The trial court granted defendant's OCGA § 9-11-9.1 motion to dismiss and motion for summary judgment and directed "the Clerk . . . to mark the docket DISMISSED WITH PREJUDICE." This appeal followed. *Held*:

1. Plaintiff contends the trial court erred in granting defendant's motion for summary judgment, arguing that genuine issues of material fact remain as to defendant's liability for ordinary negligence.

" ' "To entitle the defendant to a summary judgment the undisputed facts as disclosed by the pleadings and evidence must negate at least one essential element entitling plaintiff to recovery and under every theory fairly drawn from the pleadings and evidence (cits.) and if necessary, prove the negative or nonexistence of an essential element affirmatively asserted by the plaintiff." (Cit.)' (Emphasis omitted.) *Waller v. Transworld Imports*, 155 Ga. App. 438, 439 (271 SE2d 1) (1980); *Tolbert v. Tanner*, 180 Ga. App. 441, 444 (2b) (349 SE2d 463) (1986)." *Bishop v. Mangal Bhai Enterprises*, 194 Ga. App. 874 (2), 875 (392 SE2d 535) (1990).

In the case sub judice, the evidence shows that plaintiff was admitted to defendant's hospital on February 15, 1987, and that her "nursing Admission Assessment" sheet indicates "yes" with respect to "SIDE RAILS" in a section labeled, "HOSPITAL ROUTINE." There

---

[1] Johnie C. Smith is a party to the complaint and he seeks damages, alleging that he is plaintiff's spouse.

is also evidence that plaintiff fell from her hospital bed in the early morning hours of February 22, 1987, and that she was heavily sedated at the time of the fall. However, there is no evidence regarding the specific circumstances of plaintiff's fall. (No one knows how or why plaintiff fell from her hospital bed.) The evidence only authorizes findings that plaintiff's bed rail was in the down position at the time of the alleged fall and that four nurses and a nurse's aide were then on duty. This evidence does not demand a finding that the hospital exercised ordinary care in watching over plaintiff at the time of plaintiff's fall and it certainly does not negate plaintiff's claim that she was injured as a result of negligent acts or omissions on the part of defendant's "agents and/or employees." Consequently, to the extent that plaintiff's complaint can be construed as setting forth a simple negligence case, the trial court erred in granting defendant's OCGA § 9-11-9.1 motion to dismiss and motion for summary judgment. *Jones v. Bates*, 261 Ga. 240, 242 (403 SE2d 804). See *Flowers v. Memorial Med. Center*, 198 Ga. App. 651 (402 SE2d 541). Genuine issues of material fact remain as to whether defendant's agents or employees (professional or nonprofessional) exercised ordinary care in watching over plaintiff at the time of the alleged fall.

2. Plaintiff contends the trial court erred in dismissing her medical malpractice action under OCGA § 9-11-9.1 and argues that the trial court should have considered the amended professional malpractice complaint and the supporting expert affidavit. We do not agree.

"In any action for damages alleging professional malpractice, the plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." OCGA § 9-11-9.1 (a). In the case sub judice, plaintiff's original complaint can be construed as setting forth a cause of action for professional malpractice. However, plaintiff failed to contemporaneously file an expert's affidavit setting forth at least one act or omission resulting in professional negligence. This omission was fatal to any claim of professional malpractice stemming from the original complaint.

"[I]f a plaintiff fails to file an affidavit as required by this Code section contemporaneously with a complaint alleging professional malpractice and the defendant raises the failure to file such an affidavit in its initial responsive pleading, such complaint is subject to dismissal for failure to state a claim and cannot be cured by amendment pursuant to Code Section 9-11-15 unless a court determines that the plaintiff had the requisite affidavit available prior to filing the complaint and the failure to file the affidavit was the result of a mistake." OCGA § 9-11-9.1 (e).

In the case sub judice, defendant raised an OCGA § 9-11-9.1 de-

fense in response to any allegation of professional negligence in the original complaint and the record shows that plaintiff's expert's affidavit was not available prior to the filing of the original complaint. Consequently, the trial court did not err in refusing to sustain any claim of professional malpractice based on the untimely affidavit included with the amended complaint. See *St. Joseph's Hosp. v. Nease,* 259 Ga. 153, 154, fns. 1, 2 (377 SE2d 847).

3. Plaintiff contends the trial court erred in granting summary judgment, dismissing any medical malpractice claim with prejudice. See *Robinson v. Starr,* 197 Ga. App. 440, 441 (2) (398 SE2d 714).

The two-year limitation period for any claim of professional malpractice stemming from plaintiff's alleged February 22, 1987, fall has expired. OCGA § 9-3-71. See *St. Joseph's Hosp. v. Mattair,* 239 Ga. 674 (1) (238 SE2d 366). Consequently, plaintiff cannot dismiss the original complaint and successfully refile an action for professional malpractice. It is therefore unnecessary to determine whether the trial court erred in granting summary judgment for defendant on any claim for professional negligence.

*Judgment affirmed in part and reversed in part. Banke, P. J., Birdsong, P. J., Pope and Beasley, JJ., concur. Carley, J., concurs in Divisions 1 and 2 and in the judgment. Sognier, C. J., and Andrews, J., dissent. Cooper, J., disqualified.*

ANDREWS, Judge, dissenting.

I agree with the disposition of the professional negligence claim, but dissent because I believe the trial court also properly granted summary judgment as to any claim for ordinary negligence.

In the initial complaint, Smith alleged that, because "[b]oth rails of the bed were improperly positioned and not raised all the way up" when she fell out of her bed, the hospital was negligent in its duty to provide proper care and supervision. Although the complaint specifically stated the alleged negligent placement of the side rails, it made only a general allegation as to who at the hospital was responsible for the alleged negligent act or omission, stating: "Contrary to this duty, Defendant [hospital] by and through its agents and/or employees was negligent in the care and supervision which they rendered to Plaintiff."

In its initial defensive pleadings the hospital raised the failure of Smith to file an expert affidavit with the complaint pursuant to OCGA § 9-11-9.1, and subsequently moved for dismissal on the basis that the complaint could be construed as alleging professional negligence by nurses employed by the hospital and was unsupported by an expert affidavit. The hospital contemporaneously moved for total summary judgment on all claims whether for professional negligence or ordinary negligence. After the hospital's motions were filed, Smith

filed an amended complaint attempting to add a count specifically alleging professional negligence by the hospital's nursing staff. The trial court granted the hospital's motion to dismiss and motion for summary judgment, and Smith appealed from these rulings.

Smith argued that the grant of total summary judgment was error because, under the general allegations of her complaint, she stated a claim for ordinary negligence on which genuine issues of fact remain. She claims questions of fact exist as to ordinary negligence on two grounds: (1) that the nurses themselves could have been guilty of ordinary negligence, or (2) that she may possibly have proved other non-nursing or non-professional hospital employees could have negligently lowered or failed to raise the side rails. The record does not support the claim that any genuine issue of fact remains on these grounds, and the trial court properly granted summary judgment on any claim based on ordinary negligence.

The record reflects that, in the absence of a physician's order, the decision to have the side rails in a raised or lowered position was made by the nursing staff based on the patient's medical condition. Smith was under sedative medication and there is no evidence of a physician's order with respect to side rails. When Smith was admitted to the hospital a written nursing admission assessment indicated a "yes" with respect to side rails. Subsequent to the initial assessment, the medical records show nursing notations for each eight-hour shift reflecting various changing positions of the side rails. At the time of the fall, evidence shows that only one side rail was in the up position. On the night of the fall, four registered nurses were on duty for Smith's floor, along with one nurse's aide. There is no evidence that other hospital employees were present on the floor. With respect to who may have raised or lowered Smith's side rails, the only evidence is deposition testimony of the shift charge nurse as follows:

"Q. Whose decision was it just to put one side of Mrs. Smith's bed up on the evening of February 21st, '87?

"A. It would be the nurse's."

The practice of nursing is recognized as a profession subject to its own general standards of care and qualifications. OCGA § 43-26-1 et seq. (registered nurses); *Candler Gen. Hosp. v. Joiner*, 180 Ga. App. 455, 456-457 (349 SE2d 756) (1986). A decision by a nurse to place the side rails in an up or down position requires the exercise of professional expertise based on an evaluation of the patient's condition. Smith argues that this is a simple negligence case since, once the initial nursing assessment was made to raise the side rails, any subsequent action taken by nurses with respect to the side rails was merely a physical action taken to carry out the expert assessment, and required no professional expertise. However, this case differs from *Candler Gen. Hosp. v. McNorrill*, 182 Ga. App. 107, 110-111 (354 SE2d

872) (1987), where a patient was injured when moved by a nurse from a stretcher to a wheelchair. There, the court determined that carrying out a medical decision to move the patient was "merely an act of relative physical strength and dexterity" rather than an act requiring professional judgment. Id. at 110. Here, the allegation of negligence was not that the mere physical act of lowering the side rails was done in a negligent manner, but that the side rails were in the down position when they should have been up. When applied to nurses at the hospital, this allegation calls into question the exercise of their professional judgment on the placement of the side rails, and, therefore, states a professional negligence claim requiring proof by expert testimony, rather than a claim for ordinary negligence. General Hosp. of Humana v. Bentley, 184 Ga. App. 489, 490-491 (361 SE2d 718) (1987); OCGA § 9-11-9.1.

As to claims that non-nursing or non-professional hospital personnel could have been guilty of simple negligence, the record is devoid of any indication that such personnel were involved in adjusting the side rails. To the contrary, though one of the hospital's nurses deposed that a nurse's aide was on duty, she also indicated that it was the nurses' decision to lower or raise the side rails. Furthermore, the nursing routine flowsheets in the medical records reflect the shift-to-shift monitoring of the side rails by the nursing staff. The affidavit of the plaintiff's non-treating nurse expert, who had no personal knowledge of the present case, to the effect that side rails could have been adjusted by non-professionals is pure speculation, and sets forth no specific facts necessary to create a factual issue on summary judgment in response to the evidence produced by the hospital. Levine v. First Bank of Savannah, 154 Ga. App. 730, 731 (270 SE2d 20) (1980).

The trial judge correctly concluded that there were no genuine issues of fact with respect to ordinary negligence. On summary judgment, a responding party may not rest upon the allegations in the pleadings, but must set forth specific facts by affidavit or otherwise to show there is a genuine issue for trial. Summer-Minter & Assoc. v. Giordano, 231 Ga. 601, 604 (203 SE2d 173) (1974); OCGA § 9-11-56 (e). Smith failed to come forward with specific facts to rebut the record evidence that nurses placed the side rails, and to thus substantiate the possibility that the alleged negligence was attributable to non-professional hospital employees.

The majority finds summary judgment on ordinary negligence inappropriate because the record does not conclusively establish how or why Smith fell out of her bed, but only that the side rail was in the down position at the time of the fall, and that the nurses and a nurse's aide were on duty. Since the record does not establish the specific circumstances of the defendant's fall, by stating that the evidence does not demand a finding that the hospital exercised ordinary

care in watching over Smith, and does not negate Smith's claim that the hospital's agents or employees negligently injured her, the majority may be implicitly relying on the doctrine of res ipsa loquitur to conclude that a genuine issue of fact exists. See *Bridgestone Firestone v. Green*, 198 Ga. App. 858, 860-861 (403 SE2d 442) (1991). Even if the elements of that doctrine are present here,[2] it does not apply. Smith alleged in her complaint that the negligent placement of the side rails caused her injury. On summary judgment, the defendant hospital made a prima facie showing that the nurses, and not any other hospital employees, placed the side rails, and that in doing so they acted within the realm of their professional expertise. When Smith offered no rebuttal to this showing, it was established as a matter of law that, however the negligent act or omission may have occurred, it was attributable to nurses acting within the scope of their expertise. See *Stipp v. Bailey*, 181 Ga. App. 555, 556 (353 SE2d 52) (1987). Despite the lack of evidence as to how the injury occurred, res ipsa loquitur might have been invoked to establish a question of fact as to the nurses' professional negligence. However, Smith is precluded from suing the hospital based on the professional negligence of its nurses because she failed to file an expert affidavit, so the doctrine is of no assistance.

I am authorized to state that Chief Judge Sognier joins in this dissent.

DECIDED JUNE 28, 1991 —
RECONSIDERATION DENIED JULY 15, 1991 — 

*Ellerin & Associates, Irwin M. Ellerin, Denise A. Hinds, Heidi Koch*, for appellants.

*Sullivan, Hall, Booth & Smith, Timothy H. Bendin*, for appellee.

---

[2] "The elements of the doctrine are: (1) injury of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." (Citations and punctuation omitted.) *Bridgestone*, supra at 861.