A00A1601. UPSON COUNTY HOSPITAL, INC. v. HEAD.
(540 SE2d 626)

JOHNSON, Chief Judge.

This is an appeal from the trial court's order denying Upson County Hospital's motion to dismiss Carolyn Head's amended complaint. The question presented is two-fold: first, whether Head was required to file an expert affidavit with her original complaint, and second, whether Head's failure to file an expert affidavit with her original complaint bars the claims in her amended complaint. Our decision involves consideration of the interaction between a version of OCGA § 9-11-9.1 as it existed at the time Head filed her original complaint and OCGA § 9-3-71, the applicable statute of limitation.

Head filed a suit for damages against doctors Brown and Mameli, Thomaston Obstetrical & Gynecological Associates, and Upson County Hospital. She alleges that she was injured by caudal anesthesia administered by Dr. Brown after she was admitted to the hospital in active, premature labor. The hospital filed a motion for summary judgment contending that it was not liable for any acts or omissions of Drs. Brown and Mameli and that Head had failed to file an OCGA § 9-11-9.1 expert affidavit in support of any allegations of professional negligence against the hospital.[1]

The trial court held that Head was not seeking to hold the hospi-

---

fact, he denied having any discussion with the police regarding the robbery.

[12] See *Francis*, supra.

[1] Although an expert affidavit was attached to the original complaint, it addressed only the alleged deviations by Drs. Brown and Mameli from the standard of reasonable care and skill practiced by physicians.

tal liable for any negligent acts of Dr. Brown or Dr. Mameli and granted partial summary judgment in favor of the hospital as to that issue. It denied the hospital's motion for summary judgment as to the OCGA § 9-11-9.1 expert affidavit issue, holding that a 9.1 expert affidavit was not required given the nature of the causes of action alleged against the hospital in Head's complaint.

One day before the summary judgment hearing and nearly three years after the running of the statute of limitation, Head filed an amended complaint adding counts of professional malpractice against the hospital.[2] An OCGA § 9-11-9.1 expert affidavit was filed contemporaneously with the amended complaint.

The hospital filed a motion to dismiss Head's amended complaint, asserting that the amended complaint is barred by the statute of limitation and that Head had failed to comply with the affidavit requirements of OCGA § 9-11-9.1. In denying the motion to dismiss, the trial court held that initially only negligence claims were asserted against nonprofessional employees of the hospital and thus, no 9.1 affidavit was required. It further held that when Head filed her amended complaint, medical malpractice allegations were added that required the filing of a 9.1 expert affidavit and, in fact, Head filed such an affidavit in support of the malpractice claims.

1. Upson County Hospital contends that Head's amended complaint is barred by the statute of limitation because the 1995 version of OCGA § 9-11-9.1 is applicable to the case and does not allow her to remedy her failure to attach an expert affidavit by amendment. We first note that the hospital correctly argues that the 1995 version of OCGA § 9-11-9.1 is applicable to this case. That version stated as follows:

(e) Except as allowed under subsection (b) of this Code section, if a plaintiff fails to file an affidavit as required by this Code section contemporaneously with a complaint alleging professional malpractice and the defendant raises the failure to file such an affidavit in its initial responsive pleading, such complaint is subject to dismissal for failure to state a claim and cannot be cured by amendment pursuant to Code Section 9-11-15 unless a court determines that the plaintiff had the requisite affidavit available prior to filing the complaint and the failure to file the affidavit was the result of a mistake.[3]

---

[2] The trial court did not address the effect of the amended complaint in its order on the hospital's motion for summary judgment.

[3] In 1997, the General Assembly amended OCGA § 9-11-9.1 by changing the time in which the affidavit must be filed. However, this amendment does not apply retroactively.

However, even under this version, a 9.1 expert affidavit was required only when the plaintiff's complaint alleged professional malpractice.

In order to determine whether the trial court erred in denying the hospital's motion to dismiss Head's amended complaint, we must first determine whether the trial court erred in its legal analysis that the original complaint did not allege any professional malpractice claims requiring the filing of an OCGA § 9-11-9.1 expert affidavit contemporaneously with the complaint.

In her appellate brief, Head admits that her original complaint alleged both nonprofessional negligence and professional negligence as to the hospital and its employees. She further admits that she did not attach an OCGA § 9-11-9.1 affidavit to the complaint relating to the professional negligence allegedly committed by the hospital and its employees. And, she concedes that the hospital raised the affidavit defense in its first responsive pleading.

In an effort to circumvent the statutory language prohibiting her from curing her failure to file the requisite affidavit, Head argues that the hospital did not file a motion to dismiss on this issue until nearly 27 months after the defense was raised in its answer. This argument lacks merit.[4] The 1995 version of OCGA § 9-11-9.1 did not require the hospital to file a motion to dismiss at any specific time. The 1995 version required Head to file with her complaint an expert affidavit setting forth a negligent act or omission to support any professional malpractice claims and stated that her failure to do so could not be cured by filing an affidavit with an amended complaint.[5] In this case, the hospital raised an OCGA § 9-11-9.1 defense in response to any allegation of professional negligence in the original complaint, and the record shows that Head never argued that the affidavit was available prior to filing the complaint but was not filed as a result of a mistake or oversight. Consequently, the trial court erred in failing to grant the hospital's motion for summary judgment regarding any claims of professional malpractice based on Head's failure to file a 9.1 expert affidavit with her original complaint. The trial court also erred in failing to grant the hospital's motion to dismiss any claims of professional malpractice based on the untimely affidavit included with Head's amended complaint.[6]

The question to be answered then is which of Head's claims constitute professional malpractice. To the extent that the hospital

---

*Mug A Bug Pest Control v. Vester*, 270 Ga. 407, 408 (1) (509 SE2d 925) (1999).

[4] We assume Head's argument was prompted by the 1997 amendment to OCGA § 9-11-9.1, which requires a defendant to raise the failure to file an expert affidavit "by motion to dismiss filed contemporaneously with its initial responsive pleading."

[5] See *Smith v. North Fulton Med. Center*, 200 Ga. App. 464, 466 (2) (408 SE2d 468) (1991).

[6] See id.

agents or employees are not "professionals," as defined in OCGA §§ 14-7-2 (2), 14-10-2 (2), and 43-1-24, the affidavit requirements of OCGA § 9-11-9.1 do not apply.[7] Thus, Head may maintain her action against the hospital with regard to the negligence of any nonprofessionals. Moreover, to the extent that Head's claims are for simple negligence and not for professional malpractice, then no affidavit is required, even though the action may be against a professional.[8]

"Whether an action alleges professional malpractice or simple negligence depends on whether the professional's alleged negligence required the exercise of professional judgment and skill."[9] It is a question of law for the court to decide.[10] A professional negligence or professional malpractice claim calls into question the conduct of the professional in his area of expertise.[11] Administrative, clerical, or routine acts demanding no special expertise fall in the realm of simple negligence.[12] We have previously held that a nurse's failure to activate an alarm, as a doctor ordered, was ordinary negligence.[13] Likewise, claims that employees failed to carry out instructions[14] and that hospitals failed to have appropriate equipment[15] alleged ordinary negligence. However, if a claim of negligence goes to the propriety of a professional decision rather than to the efficacy of conduct in the carrying out of a decision previously made, the claim sounds in professional malpractice.[16]

We have carefully reviewed Head's complaint to discern any allegations of simple negligence versus professional negligence. In Head's complaint, she asserts that at no time during the administration of the caudal anesthesia was she told by hospital staff what she was receiving. With regard to the hospital, she alleges that (1) the hospital was negligent in failing to properly train and supervise the staff, physicians, and medical personnel attending patients; (2) employees or agents of the hospital, including but not limited to the labor and delivery nursing staff, negligently failed to provide an adequate and accurate record of the anesthetic drugs administered to Head during her labor and delivery and her responses to those anesthetic drugs; (3) the hospital, through its employees and agents,

---

[7] *Gillis v. Goodgame*, 262 Ga. 117, 118 (414 SE2d 197) (1992).
[8] *Creel v. Cotton States Mut. Ins. Co.*, 260 Ga. 499, 500 (397 SE2d 294) (1990); *Hodge v. Jennings Mill*, 215 Ga. App. 507, 508-509 (451 SE2d 66) (1994).
[9] (Citations omitted.) *Mendoza v. Pennington*, 239 Ga. App. 300 (1) (519 SE2d 715) (1999).
[10] *Dent v. Mem. Hosp. of Adel*, 270 Ga. 316, 318 (509 SE2d 908) (1998).
[11] *Lutz v. Foran*, 262 Ga. 819, 820 (2) (427 SE2d 248) (1993).
[12] Id.
[13] See *Dent*, supra.
[14] *Smith*, supra at 466 (1).
[15] *Jenkins County Hosp. Auth. v. Landrum*, 206 Ga. App. 753 (426 SE2d 572) (1992).
[16] *Robinson v. Med. Center of Central Ga.*, 217 Ga. App. 8, 10 (456 SE2d 254) (1995).

failed to properly inform her and obtain her consent before administering obstetrical anesthesia; (4) the hospital either failed to follow established anesthesia procedures or protocols or failed to have established protocols in place to be followed during and after the administration of obstetrical anesthesia in the labor and delivery area; and (5) the hospital is liable for any and all acts of negligence on behalf of their employees and agents.

Clearly, Head's claim that the hospital is liable for any and all acts of negligence on behalf of its employees and agents can be construed as a claim for both simple negligence and professional negligence. To the extent that the hospital employees and agents are not professionals, as defined in OCGA §§ 14-7-2 (2), 14-10-2 (2), and 43-1-24, Head was not required to file an OCGA § 9-11-9.1 expert affidavit to maintain her claim. In addition, to the extent that any acts of negligence by professionals do not involve professional malpractice and are merely clerical, administrative, or routine, Head was not required to file a 9.1 expert affidavit to maintain her claim. However, to the extent that Head's allegation asserts a claim against the hospital based upon the negligent act of a professional using his professional judgment and skill, then Head's failure to file a 9.1 expert affidavit is fatal to her claim.

Head alleges that the hospital was negligent in failing to properly train and supervise the staff, physicians, and medical personnel attending patients. Since the hospital is not a "professional," the affidavit requirement does not apply automatically as to any claim stated against it.[17] The affidavit requirement applies only when liability is based upon respondeat superior and is grounded upon acts or omissions requiring the exercise of professional skill and judgment by agents or employees who are recognized as professionals under OCGA §§ 14-7-2 (2), 14-10-2 (2), and 43-1-24.[18] Here, Head does not specify in what regard agents or employees of the hospital were allegedly negligent in their training and supervision. However, based on the facts set forth in her complaint, Head's allegation must stem from the alleged actions of the staff, physicians, and attending medical personnel in failing to obtain Head's consent to caudal anesthesia before helping with its administration and in failing to inform Head that she was receiving caudal anesthesia. To the extent that the complaint avers claims of liability arising from acts or omissions constituting malpractice by doctors, registered professional nurses, or other professionals under OCGA §§ 14-7-2 (2), 14-10-2 (2), and 43-1-24, an expert affidavit was necessary to maintain the claim. How-

---

[17] *Lamb v. Candler Gen. Hosp.*, 262 Ga. 70, 72 (2) (413 SE2d 720) (1992); *Dozier v. Clayton County Hosp. Auth.*, 206 Ga. App. 62, 64-65 (3) (424 SE2d 632) (1992).

[18] *Legum v. Crouch*, 208 Ga. App. 185, 186-187 (1) (430 SE2d 360) (1993); *Dozier*, supra.

ever, to the extent that the complaint avers claims based on either (1) the acts or omissions of staff employees who do not qualify as professionals under the stated statutes or (2) acts or omissions of professionals that do not constitute malpractice, such as administrative acts, no expert affidavit was required.[19]

Head's claim that employees or agents of the hospital negligently failed to provide an adequate and accurate record of anesthetic drugs administered to her is a claim for professional malpractice insofar as it is a claim against a professional as defined in OCGA §§ 14-7-2 (2), 14-10-2 (2), and 43-1-24. The professionals' decisions regarding whether it was necessary to record the anesthetic drugs administered to Head, which anesthetic drugs were recorded, and what reactions by Head were recorded call into question the conduct of the professionals in their area of expertise. The negligence involves an alleged failure to perform professional responsibilities with the requisite degree of care and skill required of the professional.[20] Hence, insofar as this claim involves the exercise of professional judgment and skill by professionals, an OCGA § 9-11-9.1 expert affidavit was required, and the trial court should have dismissed this claim with regard to actions of those professionals. It should be noted, however, that such a claim may be maintained against the hospital insofar as it involves nonprofessional employees or agents of the hospital.[21]

Likewise, Head's claim that hospital employees and agents failed to properly inform her and obtain her consent before administering caudal anesthesia is a claim for professional malpractice insofar as it is a claim against a professional as defined in OCGA §§ 14-7-2 (2), 14-10-2 (2), and 43-1-24. The professionals' decisions regarding what information needed to be told to Head regarding anesthesia, as well as the professionals' decisions regarding whether Head had given a fully informed consent before anesthesia was administered, call into question the conduct of the professionals in their area of expertise. The negligence involves an alleged failure to perform professional responsibilities with the requisite degree of care and skill required of the professional.[22] Hence, insofar as this claim involves the exercise of professional judgment and skill by professionals, an OCGA § 9-11-9.1 expert affidavit was required, and the trial court should have dismissed this claim with regard to actions of those professionals. It should be noted, however, that such a claim may be maintained against the hospital insofar as it involves nonprofes-

---

[19] *Legum,* supra; *Dozier,* supra.
[20] See *Dent,* supra at 321 (Benham, C. J., dissenting).
[21] *Dozier,* supra at 65.
[22] See *Dent,* supra.

sional employees or agents of the hospital.[23]

Head's claim that the hospital either failed to follow established anesthesia procedures or protocols or failed to have any established procedures or protocols in place is a claim for professional negligence. Whether hospital agents or employees failed to meet professional standards in this regard is a question that requires expert testimony, and Head was required to file an OCGA § 9-11-9.1 expert affidavit with her complaint to support this claim.

Accordingly, the trial court properly denied the hospital's motion for summary judgment with respect to the allegations in Head's original complaint which do not sound in professional negligence and which do not involve professionals since such counts required no OCGA § 9-11-9.1 affidavit. However, the trial court erred in failing to grant the hospital's motion for summary judgment with respect to any allegations in Head's original complaint which sound in professional negligence.

2. Having determined which of Head's original claims involve professional negligence and are therefore barred by her failure to file an OCGA § 9-11-9.1 expert affidavit, we must now determine whether the claims in Head's amended complaint are barred.

The first count in Head's amended complaint asserts that the hospital, through its agents and employees, committed a battery upon Head by assisting Dr. Brown and Thomaston Obstetrical & Gynecological Associates in committing a battery upon Head by administering a caudal anesthesia when it was known or should have been known that Head had specifically elected not to have regional anesthesia administered to her. Head specifically asserts that she told hospital agents and employees upon admission that she did *not* wish to receive caudal anesthesia but that hospital agents and employees nevertheless assisted in administering the caudal anesthesia. She also asserts that the hospital was negligent in failing to properly train its agents and employees regarding the necessity of obtaining timely written consent for regional anesthesia.

To the extent that this count alleges a claim for battery, Head may maintain the claim against both the professional and nonprofessional employees and agents of the hospital. A claim for battery is not an allegation of professional negligence and does not require an OCGA § 9-11-9.1 affidavit.[24] Moreover, to the extent that this count includes an allegation that the hospital failed to properly train its agents and employees, this allegation may also be maintained. As we discussed in Division 1, the hospital's purported failure to train its

---

[23] *Dozier*, supra.

[24] *Labovitz v. Hopkinson*, 271 Ga. 330, 336-337 (3) (519 SE2d 672) (1999).

agents and employees is an allegation of ordinary negligence.[25] Thus, no 9.1 expert affidavit is necessary for this claim.

However, paragraph six of Count 1 in Head's amended complaint asserts that the hospital, through its agents and employees, was negligent in failing to immediately inform Head's treating physician of the fact that she was complaining of numbness and the effects of anesthesia following the birth of her child. This paragraph does not assert a claim of battery, but rather asserts a claim for professional malpractice insofar as it is a claim against a professional as defined in OCGA §§ 14-7-2 (2), 14-10-2 (2), and 43-1-24. The professionals' decisions regarding what information and patient complaints should be told to the treating physician call into question the conduct of the professionals in their area of expertise. The negligence involves an alleged failure to perform professional responsibilities with the requisite degree of care and skill required of the professional.[26] Hence, insofar as this claim involves the exercise of professional judgment and skill by professionals, Head's failure to file an OCGA § 9-11-9.1 expert affidavit with her original complaint bars this claim, which was filed three years after the statute of limitation expired.[27] A strict reading of the statute mandates that her failure to file a 9.1 expert affidavit with her original complaint cannot be cured through the filing of an amended complaint which includes a 9.1 expert affidavit.[28] The trial court should have dismissed this claim with regard to actions of those professionals. It should be noted, however, that such a claim may be maintained against the hospital insofar as it involves nonprofessional employees or agents of the hospital.[29]

The second count in Head's amended complaint should also have been dismissed by the trial court. This count asserts that the hospital, through its agents and employees, "mixed anesthetic agents together which were not reflected on the face of [her] records" and failed to determine the possible causes of Head's anesthetic reactions. While Head attached an OCGA § 9-11-9.1 expert affidavit to her amended complaint in support of this allegation, the 9.1 expert affidavit is untimely. Not only was the affidavit filed three years after the statute of limitation expired,[30] but the claim involves the same facts as alleged in Head's original complaint: employees or agents of the hospital negligently failed to provide an accurate record of the anesthetic drugs administered to Head and her reactions to those

---

[25] *Dent*, supra at 319, n. 1 (Benham, C. J., dissenting).
[26] See id. at 321 (Benham, C. J., dissenting).
[27] OCGA § 9-3-71.
[28] See *Hodge*, supra; *Smith*, supra.
[29] *Dozier*, supra.
[30] See OCGA § 9-3-71.

drugs. Head's failure to file a 9.1 expert affidavit with her original complaint cannot be cured through the filing of an amended complaint which includes a 9.1 expert affidavit.[31] The trial court erred in denying the hospital's motion to dismiss Count 2 of Head's amended complaint.

3. Based on our holding in Division 2, we need not reach the hospital's claim that the OCGA § 9-11-9.1 expert affidavit accompanying Head's amended complaint is insufficient as a matter of law.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 13, 2000.

*Willis, McKenzie & Long, Edward L. Long, Jr.,* for appellant.
*Stephens & Shuler, Charles W. Stephens, W. Ashley Hawkins,* for appellee.

