**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 28, 2015**

# In the Court of Appeals of Georgia

A15A1572. PIEDMONT HOSPITAL, INC. v. D. M.
A15A1573. COLQUITT v. D. M.

MCMILLIAN, Judge.

Piedmont Hospital ("Piedmont") and Dr. James DeWayne Colquitt assert that the statute of repose for medical malpractice actions bars D. M.'s claims for negligence and fraud in connection with the failure to inform him of the results of a blood test performed while he was a patient at Piedmont. Thus, they contend that the trial court erred in denying their motions for summary judgment.

On May 11, 2005, Colquitt performed an appendectomy on D. M. at Piedmont after D. M. presented at the hospital's emergency room complaining of abdominal pain.[1] During the surgery, a Piedmont staff member was inadvertently exposed to D.

---

[1] We review the grant or denial of summary judgment de novo, viewing the evidence in a light most favorable to the nonmoving party. See *Giles v. Swimmer*, 290

M.'s blood or other bodily fluids, and Piedmont policy dictated that D. M.'s blood be tested for blood-borne pathogens, including HIV, to determine the risk of the employee's exposure. Piedmont's laboratory first used a sample of D. M.'s blood already in the lab's possession to perform a rapid HIV test. On the morning of May 12, 2005, the rapid HIV test showed a presumptively positive result for HIV, necessitating a second confirmatory test, but Piedmont's lab did not have a sufficient blood sample for further testing. D. M. was asked to supply a further sample, and at first he refused. However, after Colquitt explained that a blood test was needed to protect the Piedmont employee, D. M. agreed to give another sample, although he expressed reluctance about hearing the results of the test at that time. D. M. was discharged from the hospital the same day, with Colquitt's instruction to make a follow-up appointment.

Piedmont used the new blood sample drawn from D. M. to perform a "more sensitive" in-house HIV test and an outside lab test, both of which showed that D. M. was positive for HIV. The second in-house HIV test result was verified on May 13,

---

Ga. 650, 651-652 (1) (725 SE2d 220) (2012).

2005, and the final confirmatory test result was received on May 14, 2005.[2] Colquitt did not call D. M. to inform him of these results, planning instead to tell him in person at the follow-up appointment, although he did report the results to D. M.'s primary care physician. However, D. M. never scheduled a follow-up appointment with Colquitt or called him or anyone else to determine the results of his HIV tests. D. M. was not tested for HIV for another six years, until May 2011. After learning that the results of that test were "indicative of an AIDS diagnosis," D. M. obtained his Piedmont medical records and learned for the first time of the positive results of the 2005 HIV tests.

D. M. filed the lawsuit in this case on May 10, 2013, almost eight years after the HIV tests revealed a positive result, asserting claims for professional negligence, negligence per se under OCGA § 31-22-9.2 (d), ordinary negligence, and fraud. D. M. later amended his complaint to assert additional claims for negligence per se, alleging that Colquitt and Piedmont breached duties imposed under OCGA §§ 24-12-21 and 31-12-2 (b) to inform the Georgia Department of Public Health and him that he had tested positive for HIV. Piedmont and Colquitt subsequently moved for

_____

[2] For ease of reference, we will refer to all three HIV blood tests collectively as the "HIV tests."

summary judgment on the ground that OCGA § 9-3-71 (b), the statute of repose applicable to medical malpractice claims, barred D. M.'s claims against them.

Following a hearing, the trial court issued an order on December 16, 2014 (the "December 16 order"), in which it found that the statute of repose would be applicable only to the one count of D. M.'s complaint expressly asserting a claim for "professional negligence." However, the trial court also found that D. M. had effectively abandoned that claim and struck it from the complaint.[3] The trial court further noted that D. M. had expressly withdrawn his claims for negligence per se against Piedmont. After making these findings, the trial court denied summary judgment as to the remaining claims because they "do not complain of 'the propriety of a professional decision.'" On December 19, 2014, D. M. filed a "Second Amended Complaint" that omitted any claims for negligence per se against either defendant.[4] Accordingly, only D. M.'s claims for ordinary negligence and fraud remain.

_____

[3] D. M. has not appealed this ruling and thus, D. M. no longer has an express claim for professional negligence.

[4] By letter dated December 18, 2014, D. M.'s counsel informed the court that this amendment "crossed in the mail" with the December 16 Order and that D. M. planned to amend his complaint "to conform to the Order after [Colquitt's] requested certification of immediate review is denied." No further amendment appears in the record.

Subsequently, at the request of Piedmont and Colquitt, the trial court set aside its December 16 order and reentered it "verbatim" on January 14, 2015. The trial court also issued a certificate for immediate review of that order, and this Court granted the resulting applications for interlocutory appeal filed by Colquitt and Piedmont.

1. We first address D. M.'s argument that we should decline to exercise jurisdiction in this case. He asserts that the trial court used the procedure of setting aside and reentering the December 16 order to improperly grant Piedmont and Colquitt an extension of time for filing their interlocutory applications in violation of Court of Appeals Rule 30 (g), which provides that "[n]o extension of time shall be granted for filing of interlocutory applications or responses to interlocutory applications." However, the Supreme Court of Georgia has approved a trial court's use of a similar procedure, noting that "[s]ummary judgment orders [that] do not dispose of the entire case are considered interlocutory and . . . are subject to revision at any time before final judgment." (Citation and punctuation omitted.) See *Canoeside Properties, Inc. v. Livsey*, 277 Ga. 425, 427 (1) (589 SE2d 116) (2003). And Court of Appeals Rule 30 (g) is not intended to limit the authority of a trial court to revise its interlocutory orders. In any event, the rules of the appellate courts "are

5

directory only, and not jurisdictional." *Park v. Minton*, 229 Ga. 765, 768 (1) (194

SE2d 465) (1972). Accordingly, we find no error by the trial court and conclude that

the applications were timely filed and properly invoked the jurisdiction of this Court.

2. Piedmont and Colquitt argue on appeal that the trial court erred in denying

their motions for summary judgment because all of D. M.'s claims constitute an

"action for medical malpractice" under OCGA § 9-3-70[5] and thus are barred by the

statute of repose set forth in OCGA § 9-3-71 (b).

---

[5] That statute provides:

As used in this article, the term "action for medical malpractice" means any claim for damages resulting from the death of or injury to any person *arising out of*:

(1) Health, medical, dental, or surgical service, diagnosis, prescription, treatment, or care rendered by a person authorized by law to perform such service or by any person acting under the supervision and control of the lawfully authorized person; or

(2) Care or service rendered by any public or private hospital, nursing home, clinic, hospital authority, facility, or institution, or by any officer, agent, or employee thereof acting within the scope of his employment. (Emphasis supplied.) OCGA § 9-3-70.

6

Under the statute of repose, an action for medical malpractice must be brought within five years from the date on which the negligent or wrongful act or omission occurred. OCGA § 9-3-71 (b). And as our Supreme Court has explained,

> A statute of repose stands as an unyielding barrier to a plaintiff's right of action. The statute of repose is absolute; the bar of the statute of limitation is contingent. The statute of repose destroys the previously existing rights so that, on the expiration of the statutory period, the cause of action no longer exists.

(Citations omitted.) *Simmons v. Sonyika*, 279 Ga. 378, 379 (614 SE2d 27) (2005).

"The test for determining when OCGA § 9-3-71 (b)'s period of repose begins is based on the determination of when the negligent act causing the injury occurred." *Schramm v. Lyon*, 285 Ga. 72, 73 (1) (673 SE2d 241) (2009). In this case, D. M. alleges that Piedmont and Colquitt were negligent in failing to inform him of the positive HIV results from the HIV tests in May 2005, and it is undisputed that he did not file his complaint until May 2013, almost three years outside the statutory period of repose.

Nevertheless, by its terms, OCGA § 9-3-71 applies only to claims for medical malpractice, not to claims for ordinary negligence, and D. M.'s complaint contains a claim designated as "ordinary negligence." "While complaints against professionals

7

may state a claim based on ordinary as well as professional negligence, the complaint's characterization of the claims as professional or ordinary negligence does not control." *Carr v. Kindred Healthcare Operating, Inc.*, 293 Ga. App. 80, 82 (2) (666 SE2d 401) (2008). Rather, "[w]e must look to the substance of the action against a medical professional in determining whether the action is one for professional or simple negligence." (Citation omitted.) *Atlanta Women's Health Group v. Clemons*, 287 Ga. App. 426, 427 (651 SE2d 762) (2007). This determination presents a question of law for the court. *Wellstar Health System, Inc. v. Painter*, 288 Ga. App. 659, 662 (655 SE2d 251) (2007).

Under Georgia law, "[t]he confidential relationship between doctor and patient creates a duty to inform the patient of his or her condition." (Citations and punctuation omitted.) *In re Carter*, 288 Ga. App. 276, 287 (4) (653 SE2d 860) (2007). See also *Oliver v. Sutton*, 246 Ga. App. 436, 438 (540 SE2d 645) (2000). And this Court has found that "a lawsuit premised upon a breach of this duty is a classic medical malpractice action." *Carter*, 288 Ga. App. at 287 (4) (a). See also *Stafford-Fox*, 282 Ga. App. at 671 (2) (holding that failure to inform patient of vitamin deficiency stated claim for medical malpractice); *Peace v. Weisman*, 186 Ga. App. 697, 699-700 (3) (368 SE2d 319) (1988) (noting that a treating physician's failure to

8

inform a patient of his condition constituted medical malpractice, but finding no physician-patient relationship existed in that case where doctor performed the examination on behalf of the Department of Human Resources). As this Court explained in *Peace*,

> [t]here are three essential elements imposing liability [in a medical malpractice case] upon which recovery is bottomed: (1) [t]he duty inherent in the doctor-patient relationship; (2) the breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure be the proximate cause of the injury sustained. . . . [S]uch cases [are] called "classic medical malpractice actions."

(Citations and punctuation omitted.) 186 Ga. App. at 698 (1).

This authority, and in particular the *Carter* case, controls our analysis here. In *Carter*, a newborn was screened for sickle cell anemia at birth in accordance with OCGA §§ 31-12-6 and 31-12-7. Under OCGA § 31-12-7 (b), where the screening test shows a positive result, "it shall be the duty of the examining physician or the [Department of Public Health] to inform the parents of such child that the child is so afflicted." Although the child's test showed a positive result and attempts were made to inform the parents, the notification was never successfully delivered. At the age of 12, the child, who had received no treatment for the disease in the interim, suffered

9

a debilitating stroke, and the parents sued the child's treating physicians, among others, for failing to notify them of the child's condition. *Carter*, 288 Ga. App. at 278-279. This Court found that any duty on the part of the physicians to provide such notice "arose in the context of a medical malpractice claim," and, in fact, presented a classic medical malpractice claim.[6] Id. at 288 (4) (a). The Court found, however, that the parents' claims were barred because they had failed to attach an expert medical affidavit to their complaint. Id.

D. M. similarly asserts that the duty of Colquitt and Piedmont to inform him of the positive results on the HIV tests arose under Georgia statutory law. See OCGA § 31-22-9.2 (d) and (g) (2).[7] Pretermitting the scope of the duty to inform a patient of

---

[6] The Court also held that the statutory reporting requirement created no strict liability claim against the physicians. *Carter*, 288 Ga. App. at 283 (1).

[7] OCGA § 31-22-9.2 (d) requires that a "health care provider ordering an HIV test shall provide medically appropriate counseling to the person tested with regard to the test results. Such medically appropriate counseling shall only be required when the last confirmatory test has been completed." OCGA § 31-22-9.2 (g) (2) applies where a health care provider has been exposed to bodily fluids and the patient refuses the HIV test. In such a case, an HIV test may be performed

> when at least one other health care provider who is otherwise authorized
> to order an HIV test concurs in writing to the testing, the patient is
> informed of the results of the test and is provided counseling with regard
> to those results, and the occurrence of that test is not made a part of the

a positive HIV test under these provisions, we find that, as in *Carter*, D. M.'s claims

based on the failure of Colquitt and Piedmont to notify him of the positive HIV test

results, even if designated as ordinary negligence or fraud claims, arise out of the

breach of a professional duty to inform D. M. of his medical condition and thus must

be considered classic medical malpractice claims. See *Carr*, 293 Ga. App. at 83 (2)

(fraud claim based on allegation that nurses did not render services with the

appropriate standard of care properly treated as a claim for medical malpractice);

*Thompson v. Long*, 225 Ga. App. 719, 721 (4) (484 SE2d 666) (1997) (physical

precedent only) (mere fact that plaintiff alleged that doctor's conduct was intentional

does not mean that claims were not medical malpractice claims).[8]

We note that our Supreme Court has found a "tension" in the case law

regarding the proper analysis to be applied in determining whether a claim presents

---

patient's medical records, where the test results are negative, without the patient's consent.

OCGA § 31-22-9.2 (g) (2). OCGA § 31-22-9.2 has been amended since 2005, but not in any material way that would affect our analysis.

[8] But see *Labovitz v. Hopkinson*, 271 Ga. 330, 334 (3) (519 SE2d 672) (1999) (no expert affidavit necessary for actions alleging intentional or fraudulent acts by attorney because "OCGA § 9-11-9.1, by its very language, is applicable only to those professional malpractice actions alleging professional negligence").

11

a question of medical malpractice or ordinary negligence. *Deen v. Stevens*, 287 Ga. 597, 611 (3) (698 SE2d 321) (2010). The Court noted that one line of cases hold "that only when the claim goes to the propriety of a professional decision rather than to the efficacy of conduct in the carrying out of a decision previously made does it sound in professional malpractice rather than simple negligence." (Punctuation omitted.) Id. at 610 (3) (citing *Upson County Hosp., Inc. v. Head*, 246 Ga. App. 386, 389 (1) (540 SE2d 626) (2000) and *Robinson v. Med. Center of Central Ga.*, 217 Ga. App. 8, 10 (456 SE2d 254) (1995)). But other cases hold that actions against even nonprofessionals may be considered medical malpractice under the language of OCGA § 9-3-70 where "such claims 'aris(e) out of' the provision of professional services." Id. (citing *Baskette v. Atlanta Center for Reproductive Medicine*, 285 Ga. App. 876, 880-881 (648 SE2d 100) (2007); *Stafford-Fox v. Jenkins*, 282 Ga. App. 667, 672 (639 SE2d 610) (2006)).

We need not resolve this tension here, however, because under either analysis, D. M.'s claims must be considered medical malpractice claims. The first line of cases distinguishes between claims that "[call] into question the conduct of the professional in his area of expertise," which assert claims of medical malpractice, and claims that address "[a]dministrative, clerical, or routine acts demanding no special expertise[,]"

12

which "fall in the realm of simple negligence." *Head*, 246 Ga. App. at 389 (1). Because the claims in this case constitute a "classic medical malpractice action," they necessarily implicate the breach of a professional duty. Thus, they cannot be considered as claims arising out of administrative, clerical, or routine acts and likewise cannot be considered as claims for ordinary negligence. And a claim asserting a beach of a professional duty to inform a medical patient of his condition, clearly "arises out of" the provision of medical services as broadly defined under the plain terms of OCGA § 9-3-70.

Accordingly, we find that D. M.'s claims are subject to the five-year statute of repose under OCGA § 9-3-71 (b).

3. D. M. argued below, however, that Piedmont and Colquitt should be equitably estopped from asserting the statute of repose as a defense because the failure to inform D. M. of the positive HIV tests constituted fraud and/or gross negligence that deterred him from filing a claim. See generally *Rosenberg v. Falling Water, Inc.*, 289 Ga. 57, 60 (709 SE2d 227) (2011) (describing how a defendant may be equitably estopped from asserting a defense based on the statute of repose). The trial court did not address this issue because it found that D. M. had abandoned his only claim for medical malpractice; however, it acknowledged that if this ruling were

13

reversed on appeal, "it will then be necessary to address the matter of equitable estoppel." Piedmont and Colquitt nevertheless urge us to address this issue on appeal as part of our de novo review of the trial court's order, but D. M. argues that we should remand the matter for consideration by the trial court. We agree with D. M.

Piedmont and Colquitt contend that the trial court erred in denying their motion for summary judgment. Thus, they are not urging us to engage in a "right-for-any-reason analysis" to affirm the grant of summary judgment; rather, they are asking us to pursue a "wrong-for-any-reason" analysis to reverse the denial of their motion. However,

> [w]hen this Court reviews a decision of a trial court on a motion for summary judgment, it sits as a court for the correction of errors of law. An error of law has as its basis a specific ruling made by the trial court. And although in certain instances an appellate court can review a record and determine that a summary judgment ruling was right for some reason other than that given by the trial court, an appellate court should not consider whether the trial court was "wrong for any reason."

(Citations and punctuation omitted.) *Williams v. United Community Bank*, 313 Ga. App. 706, 707-708 (722 SE2d 440) (2012). See also *Strength v. Lovett*, 311 Ga. App. 35, 44 (2) (b) (714 SE2d 723) (2011).

Here, the trial court expressly declined to rule on the issue of whether Colquitt and Piedmont are equitably estopped from asserting a statute of repose defense based on its erroneous determination that no medical malpractice claims remained. Because the trial court did not reach the issue of equitable estoppel in denying the motions for summary judgment, we find that the issue is outside the proper scope of our review in this appeal. We therefore vacate the trial court's order and remand the case for consideration of D. M.'s claim of equitable estoppel. See *Strength*, 311 Ga. App. at 44 (2) (b). See also *Community Renewal and Redemption, LLC v. Nix*, 279 Ga. 840, 842 (2) (621 SE2d 722) (2005) (declining to apply a "right-for-any-reason" analysis where denial of summary judgment was based on an erroneous legal theory and trial court's ruling left other issues unresolved); *City of Gainesville v. Dodd*, 275 Ga. 834, 838-839 (573 SE2d 369) (2002) (appellate courts retain discretion in determining whether to apply the right-for-any-reason rule and consider alternative legal theories not addressed by the trial court on summary judgment, or to vacate order and remand for the trial court to consider alternative legal theories in the first instance).

*Judgments vacated and cases remanded. Barnes, P. J., and Ray, J., concur.*