**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**November 1, 2022**

# In the Court of Appeals of Georgia

A22A0741. DODGE COUNTY HOSPITAL AUTHORITY v. SEAY et al.
A22A0742. STRINGER v. SEAY et al.

PIPKIN, Judge.

In these consolidated appeals, Appellants Dodge County Hospital Authority d/b/a Dodge County Hospital and Edward F. Stringer, IV, M.D. appeal the denial of their motions to dismiss the complaint filed by Appellee Jonathan A. Seay as Executor of the Estate of Pamela M. Beauchamp. We agree with Appellants that this action sounds in professional malpractice rather than simple negligence and, thus, that Seay's failure to file an expert affidavit with his complaint was fatal to this action. Consequently, it was error for the trial court to deny the motions to dismiss, and we reverse.

"A motion to dismiss based upon the lack of an expert affidavit is a motion to dismiss for failure to state a claim under OCGA § 9-11-12 (b) (6)." (Citation and punctuation omitted.) *Brown v. Tift Health Care, Inc.*, 279 Ga. App. 164, 164 (630 SE2d 788) (2006). "On appeal, this Court reviews the denial of a motion to dismiss de novo, construing the pleadings in the light most favorable to the plaintiff with any doubts resolved in [his] favor." *Siska v. McNeil*, 346 Ga. App. 429, 431 (816 SE2d 423) (2018).

The facts underlying this action are largely undisputed. On January 30, 2016, Pamela M. Beauchamp sought treatment at Dodge County Hospital for rectal pain, and Dr. Stringer consulted on the case. The physician examined Beauchamp and determined that she had an abscess that required surgery to prevent the development of necrotizing fasciitis; during that procedure, Dr. Stringer discovered a rectal mass and performed a biopsy. Beauchamp eventually developed necrotizing fasciitis, and Dr. Stringer transferred Beauchamp to Doctors Hospital in Augusta, Georgia, where Shawn Fagan, M. D. began treating her. Several days after Beauchamp's transfer, Nick Lancia, M. D., contacted Dr. Stringer with the results of the biopsy, which showed that Beauchamp had moderately differentiated rectal adenocarcinoma. According to the complaint, Beauchamp remained under the care of Dr. Fagan, but the pathology report

2

"was not used" in her treatment for six months, until June 30, 2016, at which point Dr. Fagan advised Beauchamp that she had cancer. Despite subsequent medical intervention, including surgeries, hospitalizations, chemotherapy, and radiation therapy, Beauchamp died of rectal cancer in November 2017.

In January 2021, just days after being appointed executor of Beauchamp's estate, Seay filed this action against Appellants Dr. Stringer and Dodge County Hospital,[1] ostensibly alleging simple negligence against both parties. Specifically, the complaint alleges that Dr. Stringer discussed the pathology findings with Dr. Lancia but that Dr. Stringer never "transferred, communicated, discussed, mailed, faxed, or in any other manner revealed (or attempted to reveal) to the Doctors Hospital or . . . Dr. Fagan or anyone else that [Beauchamp] had cancer." According to the complaint, "[a]ny ordinary person would have contacted the treating physician to inform him of the results of the biopsy," and Dr. Stringer was "negligent in not consulting with Dr. Fagan about the pathology findings of cancer," which, the complaint contends, caused Beauchamp's death. As to Dodge County Hospital, the complaint alleges that the hospital was negligent in the hiring, training, supervision, and retention of its

_____

[1] Seay also asserted a claim against Dr. Fagan and a claim for wrongful death against all defendants; both claims were dismissed, and neither ruling has been appealed.

3

employees responsible for maintaining patient records, including Dr. Stringer; according to the complaint, the hospital received the pathology report from Dr. Lancia on February 4, 2016, but never delivered the report to Doctors Hospital.

Both Appellants answered and moved to dismiss, arguing that Seay's claims sounded in professional negligence and, thus, that his failure to include an expert affidavit as required by OCGA § 9-11-9.1 was fatal to the action. Specifically, Appellants alleged that, while Seay may have couched his claims as a mere administrative oversight, in substance the allegation was that Dr. Stringer "failed to timely diagnose [Beauchamp] with cancer and/or to communicate her cancer diagnosis to her treating physician," which, Appellants asserted, involves the exercise of medical knowledge, skill, or judgment. Thus, according to Appellants, the claims asserted in the complaint "squarely f[e]ll within the ambit of medical malpractice" and were required to be supported by an expert affidavit. Dodge County Hospital argued further that Seay's claims against the hospital required an expert affidavit because they were, in effect, derivative of Seay's professional negligence claims against Dr. Stringer or those working at his direction.

In response, Seay argued that his action properly alleged simple negligence because, he said, Dr. Stringer "did not have to make a medical decision" since Dr.

4

Lancia had already determined that Beauchamp had cancer. Seay posited that Dr. Stringer "only had to carry out a routine act of informing the patient of the diagnosis." The crux of the case, Seay claimed, involves "the failure of Dr. Stringer or any professional . . . [to] communicate a diagnosis of cancer [made] by another doctor," which, Seay maintained, was "merely [a] clerical, administrative, or routine" act. Seay also explained that his claims were against Appellants both individually and collectively; the complaint, according to Seay, further alleged that Beauchamp's death may have been ultimately caused by a unnamed hospital employee who negligently failed in the "clerical" duty to transmit the pathology report to Doctors Hospital.

The trial court denied the motion, concluding that, while any claim that Dr. Stringer had failed to appropriately review the pathology report and diagnose Beauchamp sounded in professional negligence, reading Seay's complaint with all inferences in his favor, the complaint could be construed as alleging simple negligence against Dr. Stringer and Dodge County Hospital. Specifically, the trial court determined that the complaint could be

> construed as alleging that Dr. Stringer, having received the biopsy report, correctly diagnosed [Beauchamp's] cancer, appreciated the need for the treating physician to receive the report, and then by an act of ordinary or simple negligence, failed to correctly transmit the report to Dr. Fagan.

5

With respect to Dodge County Hospital, the trial court concluded that Seay's complaint could be construed to "allege[] that some non-professional employee failed to perform his or her clerical duty to transmit [Beauchamp's] records to Dr. Fagan."

The trial court granted certificates of immediate review to Dr. Stringer and Dodge County Hospital, and this Court granted Appellants' application for interlocutory review. Both Appellants filed timely notices of appeal, and we have consolidated the appeals for the purpose of this opinion.

The questions presented on appeal focus on whether Seay's claims sound in professional malpractice or simple negligence. OCGA § 9-11-9.1 (a) provides, in relevant part, that

> [i]n any action for damages alleging professional malpractice against . . . [a specified] professional licensed by the State of Georgia . . . the plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim.

The plain language of OCGA § 9-11-9.1 requires an expert affidavit to support only professional malpractice claims, see *Carter v. VistaCare, LLC*, 335 Ga. App. 616, 621 (3) (782 SE2d 678) (2016), and, as we have said before, "[n]ot every suit which calls

into question the conduct of one who happens to be a medical professional is a medical malpractice action," (Citations and punctuation omitted.) *Roberts v. Quick Rx Drugs, Inc.*, 343 Ga. App. 556, 558 (1) (807 SE2d 476) (2017).

"A professional negligence claim calls into question the conduct of the professional in his area of expertise. Administrative, clerical, or routine acts demanding no special expertise fall in the realm of simple negligence." (Citations and punctuation omitted.) *Ambrose v. Saint Joseph's Hosp. of Atlanta, Inc.*, 325 Ga. App. 557, 559 (1) (754 SE2d 135) (2014). Therefore, "we must look to the substance of the action against a medical professional in determining whether the action is one for professional or simple negligence." (Citation and punctuation omitted.) *Piedmont Hosp., Inc. v. D.M.*, 335 Ga. App. 442, 445 (2) (779 SE2d 36) (2015). "[W]e are not bound by [Seay's] characterization of his claims, and [we] instead must review the complaint de novo to discover the nature of [the] claims." *Ziglar v. St. Joseph's/Candler Health Systems, Inc.*, 341 Ga. App. 371, 373 (800 SE2d 395) (2017). "Whether a complaint sounds in ordinary or professional negligence is a question of law for the court to decide." *St. Mary's Health Care Systems, Inc. v. Roach*, 345 Ga. App. 274, 277 (1) (811 SE2d 93) (2018).

We first begin with the claim against Dr. Stringer, which is, at best, nebulous. Seay acknowledges that the complaint actually alleges that Dr. Stringer was negligent in failing to "consult" with Dr. Fagan concerning the pathology report, but Seay argues that the complaint must be understood to challenge "Dr. Stringer's decision to not communicate the findings of a pathology report to a subsequent treating physician." According to Seay, the pathology report is itself a cancer diagnosis, and Dr. Stringer should have shared it with Dr. Fagan as Beauchamp's subsequent treating physician.[2]

While Seay couches his claim as one against Dr. Stringer for failing to communicate the pathology results to Dr. Fagan, the duty owed by a physician to communicate a result or a diagnosis – which Seay contends that Dr. Stringer breached

---

[2] Seay makes no distinction between the pathology result detecting cancerous cells and a medical diagnosis of cancer; indeed, Seay repeatedly presumes, without discussion, that Dr. Lancia, as the pathologist, "made the decision that Beauchamp had cancer" and that "Dr. Lancia made a professional decision that Ms. Beauchamp had rectal cancer." However, nothing in the record explains whether Seay's understanding is accurate or whether Dr. Lancia is, in fact, responsible for making such a diagnosis. This uncertainty is compounded by the trial court's order, which concludes that the complaint may be understood to suggest that *Dr. Stringer* made the actual cancer diagnosis but then failed to communicate that medical determination to Dr. Fagan. While not mentioned by the parties, this confusion all stems from the same question, namely, which actors in this line of events were responsible for making a diagnosis, reporting that diagnosis to the relevant individuals, and transmitting that diagnosis to subsequent providers, none of which is addressed in the pleadings. The lack of nuance and mountain of assumptions bolster our conclusion that this is not a case of simple negligence.

8

– actually arises out "[t]he confidential relationship between *doctor and patient*," that is between Dr. Stringer and Beauchamp. (Emphasis supplied.) *Hendrix v. Schrecengost*, 183 Ga. App. 201, 202 (1) (358 SE2d 486) (1987). It is well settled that "a lawsuit premised upon a breach of this duty is a classic medical malpractice action." *In re Carter*, 288 Ga. App. 276, 287 (4) (a) (653 SE2d 860) (2007).

In *Carter*, this Court held that claims against physicians for their alleged failure to inform a plaintiff that her newborn son had tested positive for sickle cell anemia sounded in medical malpractice. 288 Ga. App. at 287-288 (4) (a). Likewise, in *Stafford-Fox v. Jenkins*, we recognized that a claim that a physician negligently failed to "implement or follow proper procedures to insure that [the physician] saw and acted upon test results" for a vitamin deficiency did not involve "purely administrative acts, but involve[d] the exercise of medical knowledge, skill or judgment in diagnosing a medical condition and rendering appropriate treatment." 282 Ga. App. 667, 671 (2) (639 SE2d 610) (2006). More recently in *Piedmont Hosp.*, we concluded that a physician's failure to inform a patient of their positive HIV test "must be considered [a] classic medical malpractice claim[]." 335 Ga. App. at 446-447 (2).

As the United States District Court for the Middle District of Georgia recently noted, "the point has clearly been made" by courts of this State that a "failure-to-inform

9

claim constitutes a medical malpractice action." *Knapik v. United States*, 2020 WL 7775429, 2020 U.S Dist. Lexis 244106 at \*27 (M.D. Ga, Dec. 30, 2020). We have found no authority – and Seay has cited none – which could allow Seay to circumvent this established precedent by characterizing his claim as the mere failure to "relay[] or transfer[] a diagnosis of cancer" to *another physician* rather than to Beauchamp herself. Indeed, such a distinction would have little import; as in the above-discussed cases, Dr. Stringer owed a duty to communicate the pathology finding to Beauchamp, see *In re Carter*, 288 Ga. App. at 287 (4) (a), and his alleged failure to do so here led to the same result, namely, that Beauchamp was left unaware of the pathology findings.[3]

In short, we have no trouble concluding that the claim here against Dr. Stringer – whether understood as the negligent failure to consult with another physician concerning the pathology report or the negligent failure to inform Beauchamp or her subsequent treating physicians of those results – sounds in professional negligence and, thus, required an expert affidavit in accordance with OCGA § 9-11-9.1. Accordingly, Seay's failure to include an affidavit is fatal to his claim against Dr. Stringer, and the

---

[3] Under Seay's theory, any claim for failure to diagnose or failure to inform could be transformed into simple negligence simply by framing the claim as one concerning the transmittal or handling of medical records. Our decisions in *In re Carter* and *Piedmont Hosp.*, which expressly concern the handling of medical-testing results, implicitly reject such an approach.

10

trial court should have dismissed the claim. *In re Carter*, 288 Ga. App. at 287-288 (4) (a).

The claims against Dodge County Hospital are viewed through a slightly different lens. The hospital is not a "professional" as that term is defined in OCGA § 9-11-9.1 (g), and, consequently, "the affidavit requirement does not apply automatically as to any claim asserted against it." *Dozier v. Clayton County Hosp. Auth.*, 206 Ga. App. 62, 64 (3) (424 SE2d 632) (1992). Generally speaking, "[t]he affidavit requirement applies only when liability is based upon respondeat superior and is grounded upon acts or omissions requiring the exercise of professional skill and judgment by agents or employees who are recognized as professionals[.]" *Upson County Hosp., Inc. v. Head*, 246 Ga. App. 386, 390 (1) (540 SE2d 626) (2000). See also OCGA § 9-11-9.1 (g).

Seay acknowledges on appeal that all the claims here – whether against Dr. Stringer, the hospital, or as-of-yet unidentified hospital employees – all stem from the "fail[ure] to communicate to Dr. Fagan . . . that Beauchamp had cancer." As explained above, however, these allegations are grounded in a classic medical negligence claim of failure to inform and, thus, require an expert affidavit pursuant to OCGA § 9-11-9.1; accordingly, the trial court should have dismissed the claims against Dodge County Hospital. See *Piedmont Hosp.*, 335 Ga. App. at 448 (2) (claims against hospital arising

11

out of physician's failure to inform patient of positive HIV result considered medical malpractice claims); *In re Carter*, 288 Ga. App. at 288 (4) (b) (affirming dismissal of claims against non-professional entity where underlying claim – failure to inform – sounded in professional negligence and no affidavit was included with the complaint). Cf. *Stafford-Fox*, 282 Ga. App. at 672 (2) (claims against professional corporation based on allegations concerning the nonprofessional staff employees considered an action for medical malpractice where the claimed damages "arose" out of the underlying medical malpractice) (emphasis removed). Compare *Lamb v. Candler General Hosp., Inc.*, 262 Ga. 70, 71 (1) (413 SE2d 720) (1992) (recognizing that a hospital's failure to furnish medical equipment and facilities sounds in simple negligence); *Roberts*, 343 Ga. App. at 561 (1) (claim concerning pharmacy cashier handing over prescription drugs to the wrong patient raises simple negligence claim).

*Judgments reversed. Rickman, C. J., and Miller, P. J., concur.*