A02A0873. CRISP REGIONAL NURSING & REHABILITATION CENTER v. JOHNSON et al.
(574 SE2d 650)

BARNES, Judge.

Following the grant of its application for interlocutory appeal, Crisp Regional Nursing & Rehabilitation Center ("Crisp Regional") challenges the trial court's denial of its motion for summary judgment on Ernest and Rose Johnson's claims for negligence, wrongful

---

[10] *Chandler v. State*, 213 Ga. App. 46, 47 (2) (443 SE2d 679) (1994).

death, and intentional or negligent infliction of emotional distress on behalf of Lucille Davis. Davis died while in the care of Crisp Regional.

Crisp Regional contends the trial court erred by denying its motion for summary judgment without deciding: (1) whether this is a medical malpractice case requiring the Johnsons to rebut Crisp Regional's expert testimony with their own expert testimony, (2) whether punitive damages can be awarded against a hospital authority, (3) whether punitive damages may be awarded in a wrongful death action, (4) whether its actions were sufficiently egregious to constitute infliction of emotional distress under Georgia law, and (5) whether Crisp Regional's conduct authorized the imposition of punitive damages. Crisp Regional also contends the trial court erred by denying its motion for summary judgment without addressing whether the allegations in the preface of the Johnsons' complaint were actionable under Georgia law. While we find that under our law Crisp Regional was entitled to summary judgment on the Johnsons' negligence and wrongful death claims and cannot be held liable for punitive damages, we further find that the trial court did not err by denying summary judgment on the emotional distress claims.

Ernest and Rose Johnson, the plaintiffs below, brought suit as executors of the estate of Lucille Davis against Crisp Regional, contending its negligent care of Davis caused her to fall and suffer severe injuries that led to her death. The complaint alleges causes of action for negligence, wrongful death, and intentional and/or negligent infliction of emotional distress.

1. The standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). When ruling on a motion for summary judgment, the party opposing the motion should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843) (1988). When reviewing the denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997).

2. Giving the Johnsons the benefit of all reasonable doubt and construing the evidence and all inferences and conclusions from the evidence in their favor, the record shows that Davis was a resident in Crisp Regional, a long-term nursing care facility. She entered the facility in 1989 as a kidney patient needing help with daily living and remained a patient until she died in 1998.

Davis received dialysis treatments at an outside facility, and usually was in a weakened condition when she returned and had

fallen in December 1996 and April 1997, following dialysis treatment.

In August 1997, Davis returned from dialysis and again did not feel well. She told the nurse on duty of this. According to the nurse, when she turned to get a blood pressure cuff, Davis got up from a chair and tried to walk to her room, but fell.[1] After her fall, Davis was a quadriplegic.

In support of their claim for negligence and wrongful death, the Johnsons allege that Crisp Regional's staff knew, and it was obvious, that Davis was very weak when she got back from dialysis and needed assistance. Thus, the nursing staff should have assisted Davis to her room, and their failure to do so constituted negligence. The Johnsons further assert that as a result of the fall, Davis's medical condition and general health declined substantially and ultimately resulted in her death.

Crisp Regional asserts that this is a claim for medical malpractice, which must fail because it produced an expert's affidavit stating that it was not negligent and the Johnsons failed to produce expert testimony showing that Crisp Regional was in some respect negligent. See *Sparks v. Southwest Community Hosp.*, 195 Ga. App. 858 (395 SE2d 68) (1990). The Johnsons contend, however, that the claim sounds in simple negligence only, and the fact that the injury occurred in a medical setting does not make this a medical malpractice case. See *Candler Gen. Hosp. v. McNorrill*, 182 Ga. App. 107, 109 (2) (354 SE2d 872) (1987).

We find that this is a professional malpractice action. The question is whether, based on Davis's physical condition after returning from dialysis, the nurse was required to give her immediate assistance or whether the nurse could delay the assistance until she secured a blood pressure cuff. "Whether an action alleges professional malpractice or simple negligence depends on whether the professional's alleged negligence required the exercise of professional judgment and skill." *Mendoza v. Pennington*, 239 Ga. App. 300 (1) (519 SE2d 715) (1999). Whether a complaint alleges ordinary negligence or professional malpractice is a question of law for the court. *Dent v. Mem. Hosp. of Adel*, 270 Ga. 316, 317 (509 SE2d 908) (1998).

Questions of this nature, including whether a wheelchair was required, "are decisions which normally require the evaluation of the medical condition of a particular patient and, therefore, the application of professional knowledge, skill, and experience." *Dent v. Mem. Hosp.*, supra, 270 Ga. at 318. Therefore, we find that the Johnsons

---

[1] Although the nurse believes that Davis fell from the chair, Davis stated that she was walking when she fell.

were required to rebut Crisp Regional's expert testimony with expert testimony of their own. *Howard v. Walker*, 242 Ga. 406, 408 (249 SE2d 45) (1978). Because they failed to do so, the trial court erred by denying Crisp Regional's motion for summary judgment on the Johnsons' negligence claim and on their wrongful death claim which is based on Crisp Regional's negligence causing Davis's fall.

3. The infliction of emotional distress allegations concern Crisp Regional's actions following Davis's fall in August 1997. Crisp Regional contends that its actions were not sufficient to constitute actionable conduct under this theory of liability. In support of their claim for infliction of emotional distress, the Johnsons allege that Davis was not allowed to return to her old room after being at the hospital for several weeks following her fall, and that her clothes and belongings were left in boxes in the hallway. They allege Davis was treated differently after her fall, that she was not fed occasionally because the staff would not take the time to assist her with eating, and that ultimately a feeding tube was inserted so the staff could avoid having to take the time to assist in feeding Davis.

To prevail on allegations of intentional infliction of emotional distress, the Johnsons must show that Crisp Regional by extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to Davis. *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 706 (2) (409 SE2d 835) (1991). To support a claim for intentional infliction of emotional distress, the conduct complained of must have been extreme and outrageous and the emotional distress must have been severe. Id. Further,

> [w]hether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law. [Cit.] If the evidence shows that reasonable persons might find the presence of extreme and outrageous conduct and resultingly severe emotional distress, the jury then must find the facts and make its own determination. [Cits.]

Id. "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Citations and punctuation omitted.) *Phinazee v. Interstate Nationalease*, 237 Ga. App. 39, 40 (514 SE2d 843) (1999).

In this case, construing the evidence in their favor and giving them the benefit of all reasonable doubts and inferences, the Johnsons have produced sufficient evidence to raise a genuine issue on

whether Davis suffered severe emotional distress that was caused by Crisp Regional's allegedly extreme and outrageous conduct.

Although the case is dependent in large measure on testimony concerning what Davis told the Johnsons and others, her statements could be admissible under the necessity exception to the hearsay rule. See *Clark v. State*, 271 Ga. 6, 9 (5) (515 SE2d 155) (1999). Additionally, Davis's medical records would be admissible to support her claims. See OCGA § 24-3-14.

Crisp Regional contends that, because Davis was a Medicaid patient, it was required to give her room to another patient if she was away from the facility for more than seven days, and Davis was away from her room for about two weeks. Thus, Crisp Regional contends that its conduct in taking Davis's old room away could not be considered an intentional, reckless, extreme, or outrageous act.

Even assuming that the Medicaid regulations demanded that Crisp Regional evict Davis from the room she had occupied for many years, this argument does not address the Johnsons' claims arising after Davis was removed from her room. The Johnsons allege that Crisp Regional removed Davis's possessions from her room and placed them in boxes in an unsecured area where persons unknown had access to them, scattered them, and took what they wanted of her property. Davis was very upset about this; she did not understand why they put her clothes in such a place. She was so upset she just wanted to give her possessions away. Further, the room they moved her to was a big, barn-like room with several other beds, which was cold and drafty and she was not provided with adequate covers.

The Johnsons also allege that Crisp Regional failed to feed Davis. Although Crisp Regional contends this allegation is solely based upon the Johnsons' inferences upon finding untouched, cold food trays in her room when they came to visit, Davis told them that she was not being fed, and that she felt the staff could not be bothered with feeding her.

While the medical records show Davis refused to eat at times, which resulted in the placement of a feeding tube, a nurse told the Johnsons that this was done because the staff did not have time to feed Davis because she had to have such small portions. Even though no direct evidence exists that Crisp Regional intentionally refused to feed Davis, and the medical records are replete with references to attempts to assist her, Davis told the Johnsons that she was not being fed properly because the staff was going too fast, and she could not get the food she needed, so she stayed hungry sometimes. She felt that the staff could not be bothered with feeding her. She complained that after her fall her level of treatment changed.

Additionally, the Johnsons allege that Crisp Regional denied

them access to Davis's medical records even though Mr. Johnson had been appointed her attorney-in-fact under her durable power of attorney. Crisp Regional's basis for denying access was a handwritten note prepared by someone other than Davis and marked with her "X." The note was witnessed by personnel from Crisp Regional. The record also shows that when Mr. Johnson sought information about her fall, he received a letter telling him he must contact Crisp Regional's attorney. Further, Davis ultimately decided to forgo additional dialysis treatments and issued orders that she was not to be resuscitated. Crisp Regional stopped the dialysis without informing the Johnsons, who the record shows had been frequent visitors of Davis and were very interested in her care.

The Johnsons assert that Davis never told them that she wanted to stop dialysis, and that when they protested this decision to Crisp Regional, they were informed that Crisp Regional had already stopped the treatment. The Johnsons contend that Davis wanted to live. Also, Davis cautioned them, "I'm scared. Don't do anything to cause them to do something," because she did not want to make any trouble.

A reasonable jury could conclude from this evidence that Davis was intentionally removed from the room that she had occupied for many years, that her possessions were left unsecured intentionally or recklessly so that they could be pawed through and stolen, that Davis was then placed, intentionally or recklessly, in a cold, uncomfortable room, and that she was deprived of adequate food intentionally or recklessly. A jury could further conclude that intentionally or recklessly the Johnsons were deprived of necessary information concerning Davis's medical condition, and that Davis felt isolated from her family. A reasonable jury could also conclude that this conduct was outrageous, and that this outrageous conduct caused such severe emotional distress that Davis lost her will to live and terminated her dialysis. If proved, reasonable persons would find this conduct outrageous. *Yarbray v. Southern Bell*, supra, 261 Ga. at 706.

Accordingly, the trial court did not err by denying Crisp Regional's motion for summary judgment on this claim.

4. The trial court also erred by denying Crisp Regional's motion for summary judgment on the Johnsons' claims for punitive damages. In *MARTA v. Boswell*, 261 Ga. 427 (405 SE2d 869) (1991), our Supreme Court held that, under the public policy of this state, governmental entities cannot be subject to an award for punitive damages. In *Hosp. Auth. of Clarke County v. Martin*, 210 Ga. App. 893 (438 SE2d 103) (1993), this court held that hospital authorities, as government entities, cannot be held liable for punitive damages. Our decision was affirmed in *Martin v. Hosp. Auth. of Clarke County*, 264 Ga. 626 (449 SE2d 827) (1994). In this case, Crisp Regional's administrator testified that the Hospital Authority of Crisp County does

business as Crisp Regional Health Care Systems, Inc., and that Crisp Regional Nursing & Rehabilitation Center is part of Crisp Regional Health Care Systems. As the Johnsons did not challenge or rebut this evidence, Crisp Regional is entitled to summary judgment on all the Johnsons' claims for punitive damages. *Lau's Corp. v. Haskins*, supra, 261 Ga. at 491. Therefore, we need not address whether punitive damages would otherwise be authorized against Crisp Regional's actions in this case.

5. We find that the Johnsons' complaint asserted three causes of action and that the trial court did not err by failing to address separately the other preliminary or evidentiary matters stated in the complaint.

Consequently, because we found that the trial court did not err by denying Crisp Regional's motion for summary judgment on the Johnsons' claim seeking damages for intentional infliction of emotional distress, that portion of the trial court's order is affirmed and the case is remanded to the trial court for further proceedings on that claim. As we also found, however, that the trial court erred by denying the motion on the Johnsons' claims for negligence, wrongful death, and punitive damages, the trial court's order denying summary judgment on those claims must be reversed and the case remanded to the trial court with direction to grant summary judgment to Crisp Regional on those claims.

*Judgment affirmed in part and reversed in part with direction. Ruffin, P. J., and Pope, Senior Appellate Judge, concur.*

DECIDED NOVEMBER 22, 2002.

*Durham, McHugh & Duncan, James B. Durham, William M. McHugh, Jr., Beth M. Duncan*, for appellant.
*Charles R. Floyd, Jr., Deborah M. Floyd*, for appellees.