**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 9, 2016**

# In the Court of Appeals of Georgia

A15A1773. CARTER v. VISTACARE, LLC.
A16A0303. CARTER v. VISTACARE, LLC.

MCMILLIAN, Judge.

In Case No. A15A1773, Regina A. Carter ("Carter"), as administrator of the Estate of Mildred Irene Cantrell ("Cantrell"), appeals the trial court's order granting judgment in favor of VistaCare, LLC, d/b/a VistaCare Hospice ("VistaCare") on Carter's claims for battery and negligence arising out of VistaCare's provision of hospice care to Cantrell. In Case No. A16A0303, Carter appeals the trial court's order granting summary judgment on her claim of fraud against VistaCare in the same action. For the reasons set forth below, we affirm the trial court's judgment in Case No. A15A1773, and reverse and remand in Case No. A16A0303.

Cantrell first filed a lawsuit against VistaCare on September 6, 2011 (the "2011 Complaint"), alleging claims for negligence and fraud in connection with hospice services VistaCare provided her in 2010 (the "First Litigation").[1] Cantrell passed away at some point during the course of that lawsuit, and Carter was substituted as the plaintiff. Later, on May 28, 2014, after jury selection began at trial, Carter voluntarily dismissed the 2011 Complaint.

Approximately six months later, on November 25, 2014, Carter filed the complaint in this case (the "2014 Complaint"), asserting claims for fraudulent inducement, battery, and negligence. The 2014 Complaint alleged that in 2009 and 2010, Cantrell's primary treating physician wrote orders certifying her for Medicare-covered home healthcare services. However, Carter alleged that on or about February 6, 2010, VistaCare "took it upon itself" to change the doctor's orders to home hospice services and to place Cantrell in hospice care even though she did not qualify for such services. Carter further alleged that the hospice care Cantrell received from VistaCare, including the administration of morphine, damaged Cantrell's health, and resulted in her hospitalization.

---

[1] The original suit was filed against Odyssey VistaCare Hospice Foundation, Inc., d/b/a VistaCare of Griffin. The complaint was later amended to change defendant's name to VistaCare, LLC, d/b/a VistaCare Hospice.

VistaCare moved to dismiss Carter's claims, and the trial court issued an order granting VistaCare's motion as to both the battery and negligence claims but denying the motion as to the fraud claim (the "First Order").[2] VistaCare subsequently moved for summary judgment on the fraud claim, and the trial court granted the motion in its final order in the case (the "Final Order"). Carter appeals both these orders.

*Case No. A15A1773*

In the First Order, the trial court found that because Carter did not assert a battery claim in the 2011 Complaint, the battery claim in the 2014 complaint was time-barred. The court also found that Carter had asserted only professional negligence claims and because she failed to file an expert affidavit with the 2014 Complaint, her negligence claim failed to comply with OCGA § 9-11-9.1

1. Carter first argues that the trial court erred in converting VistaCare's motion to dismiss Carter's battery claim into a motion for summary judgment by considering matters outside the pleadings without giving Carter notice and opportunity to present any materials in opposition.

_____

[2] VistaCare filed a separate motion to dismiss based on the failure to diligently achieve service, but the trial court denied that motion. VistaCare does not appeal that ruling and thus we do not address it in this appeal.

This Court has previously found that the trial court considered matters outside the pleadings, thereby converting the motion to dismiss into a motion for summary judgment,[3] and that finding is binding in all subsequent proceedings in this case.[4] OCGA § 9-11-60 (h) ("any ruling by . . . the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in . . . the Court of Appeals"). And Carter is correct that when a trial court considers matters outside the pleadings on a motion to dismiss, the court has the burden of informing the party opposing the motion that it will consider such matters "and that, if the opposing party so desires, the party has no less than 30 days to submit evidence in response to the motion for summary judgment." (Citation omitted.) *Brooks v.*

---

[3] We initially dismissed Carter's appeal in this case on the ground that the First Order, which granted in part and denied in part VistaCare's motion, was not a final order and found that Carter should have followed the interlocutory appeal procedures set forth in OCGA § 5-6-34 (b). However, Carter moved for reconsideration, contending that the trial court converted VistaCare's motion to dismiss into a motion for summary judgment when it considered matters outside of the pleadings. Carter asserted that the First Order was therefore directly appealable under OCGA § 9-11-56 (h), which provides that "[a]n order granting summary judgment on any issue or as to any party shall be subject to review by appeal." Finding Carter's argument persuasive, we vacated the order of dismissal and reinstated the appeal.

[4] Therefore, we will review both the First Order and the Final Order under the de novo standard of review applicable to orders on summary judgment, construing the evidence in a light most favorable to Carter, as the nonmovant. See *Kelley v. Randolph*, 295 Ga. 721, 722 (1) (763 SE2d 858) (2014).

4

*Multibank 2009-1 RES-ADC Venture, LLC*, 317 Ga. App. 264, 268 (2) (730 SE2d 509) (2012). See also OCGA § 9-11-12 (a). However, "the party opposing the motion may waive the right to the 30-day notice by acquiescing in the movant's submission of evidence in support of the motion to dismiss." *Morrell v. Wellstar Health System, Inc.*, 280 Ga. App. 1, 2 (1) (633 SE2d 68) (2006). Moreover, "deficient notice is not reversible [error] absent a showing of harm." (Citation omitted.) *Bynum v. Horizon Staffing*, 266 Ga. App. 337, 339 (1) (596 SE2d 648) (2004).

VistaCare attached copies of the 2011 Complaint, an amended version of that complaint, and excerpts from the pre-trial hearing in the First Litigation as exhibits to its brief in support of the motion to dismiss. Carter responded to the motion approximately 30 days later and raised no objection to the trial court's consideration of these documents. In fact, Carter relied upon the 2011 Complaint, quoting the allegations in that complaint extensively in support of her arguments opposing the motion. Therefore, "[a]ll the parties, in effect, treated the motion to dismiss as being converted to a motion for summary judgment, and no party was denied an opportunity to respond to evidence submitted." *Morrell*, 280 Ga. App. at 2 (1). See also *Cox Enterprises, Inc. v. Nix*, 273 Ga. 152, 154 (538 SE2d 449) (2000). Thus, we find that

5

Carter waived the requirement of formal notice from the trial court that it would consider the motion as one for summary judgment.[5] Id.

2. Carter next argues that the trial court erred in dismissing the battery claim on the ground that it was barred under the statute of limitations. The 2014 Complaint was filed within the six-month period for a renewal of the claims asserted in the 2011 Complaint under OCGA § 9-2-60 (c),[6] and Carter argues that the 2011 Complaint stated the elements for a battery claim, even if it did not expressly assert such a claim. Thus, Carter argues that the battery claim in the 2014 Complaint should relate back to the date of filing of the 2011 Complaint for purposes of the statute of limitations.

However, "[t]o be a good 'renewal' of an original suit, so as to suspend the running of the statute of limitations under OCGA § 9-2-61, the new petition must be substantially the same both as to the cause of action and as to the essential parties."

---

[5] Moreover, we note that the trial court was entitled to take judicial notice of the record from the First Litigation in addressing the issue of whether the battery claim was part of that litigation, which was filed in the same court and heard before the same judge as the present case. See *Petkas v. Grizzard*, 252 Ga. 104, 108 (312 SE2d 107) (1984); *Belcher v. Folsom*, 258 Ga. App. 191, 192 (573 SE2d 447) (2002).

[6] OCGA § 9-2-60 (c) provides that "[w]hen an action is dismissed under this Code section, if the plaintiff recommences the action within six months following the dismissal then the renewed action shall stand upon the same footing, as to limitation, with the original action."

(Citation and punctuation omitted.) *Safi-Rafiq v. Balasubramaniam*, 298 Ga. App. 274, 275 (679 SE2d 822) (2009). Therefore, "[a] defendant's liability cannot be enlarged beyond that indicated by the pleadings in the first case." (Citation omitted.) *Blier v. Greene*, 263 Ga. App. 35, 38 (1) (a) (587 SE2d 190) (2003). Although the 2011 Complaint contains similar factual allegations to those raised in the 2014 Complaint, it is undisputed that the 2011 Complaint did not assert a cause of action for battery. Thus, we agree with the trial court that the battery claim in the 2014 Complaint asserts a new cause of action and does not relate back to the date of filing of the 2011 Complaint for purposes of the statute of limitations.

Moreover, in addition to considering the allegations of the 2011 Complaint, the trial court took judicial notice of the pre-trial order from the First Litigation. In granting summary judgment on the battery claim, the trial court found that "[r]egardless of how [Carter] opts to re-cast the claims asserted in [the First Litigation], nothing in the pleadings, or more importantly the [Consolidated] Pre-Trial Order, remotely suggest that [Carter] sought to assert a battery claim" in that litigation.

Where a trial court takes judicial notice of the record of the first-filed action in considering the propriety of a renewal action, "the record or portion thereof

7

considered by the trial court should be designated to be included in the appeal if a party wishes to enumerate error on the ruling." See *Petkas v. Grizzard*, 252 Ga. 104, 108 (312 SE2d 107) (1984); *Belcher v. Folsom*, 258 Ga. App. 191, 192 (573 SE2d 447) (2002). In that manner, "[a]ny party may contest or argue the effect the prior record has on the case or issue being litigated and may cite to portions of the record which have been recognized or incorporated by the court." *Petkas*, 252 Ga. at 108. Carter, as the appellant, had the burden of designating the appropriate portions of the record from the First Litigation for inclusion on appeal. *Petkas*, 252 Ga. at 108. However, Carter failed to make such a designation and thus we do not have a copy of the pre-trial order cited by the trial court in support of its ruling. "It is well established that the burden is on the party alleging error to show it by the record and that where the proof necessary for determination of the issues on appeal is omitted from the record, an appellate court must assume that the judgment below was correct and affirm." (Citation and punctuation omitted.) *Hooks v. Humphries*, 303 Ga. App. 264, 268 (3) (692 SE2d 845) (2010). Accordingly, we affirm the trial court's grant of summary judgment on the battery claim.

3. Carter also asserts that the trial court erred in dismissing her negligence claim for failure to file an expert affidavit in accordance with OCGA § 9-11-9.1

8

because the trial court misconstrued the nature of the negligence claim asserted in the 2014 Complaint. We disagree.

Carter based her negligence claim on the factual allegations that VistaCare failed to follow Cantrell's doctor's orders for home healthcare and instead placed her in hospice care, where the treatment she received, including the administration of morphine, undermined her health. In pertinent part, the 2014 Complaint, alleges that:

> – On or about May 25, 2010, [Carter] noticed that [Cantrell's] condition had worsen[ed] and, after being told by Kathy, one of [Vistacare's] nurses, that [Cantrell] was dying, [Carter] called 911 and had [Cantrell] rushed to Henry General Hospital Emergency Room, where it was determined that [Cantrell] was overdosed on Morphine and near death.
>
> * * * * * * *
>
> – The actions of [VistaCare] as described hereinabove constitute negligence in that VistaCare owed a duty to [Cantrell] to carry out the home healthcare services as ordered by [Cantrell's doctor].
>
> – VistaCare breached that duty by ignoring [the doctor's] order for home healthcare and instituting its own order for hospice, and never getting approval of any hospice plan by [the doctor].

9

– [Cantrell] suffered pain and suffering, sustained loss of health, almost lost her life, and was damaged as a result thereof, as the proximate result of said breach.

The trial court determined that these allegations asserted a claim of professional negligence and not simple negligence because Carter "alleges that Ms. Cantrell was injured as a result of the medication administered by healthcare professionals employed by [VistaCare] after Ms. Cantrell was fraudulently transferred to hospice care."[7]

OCGA § 9-11-9.1(a) provides that "[i]n any action for damages alleging professional malpractice . . . the plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim."[8] Therefore, "OCGA § 9-11-9.1 requires a plaintiff to

---

[7] We note that the trial court considered only the allegations of the 2014 Complaint in determining whether Carter should have filed an expert affidavit in support of her negligence claim.

[8] We note, however, "the appellate courts have held that it is unnecessary to file an expert affidavit with a complaint filed against a professional if the complaint alleges the commission of an injurious *intentional* act by the professional during the existence of a professional relationship between the plaintiff and defendant." (Citations omitted; emphasis in original.) *Labovitz v. Hopkinson*, 271 Ga. 330, 334 (3) (519 SE2d 672) (1999). Therefore, no expert affidavit was required in connection

10

attach to the complaint an expert's affidavit supporting his malpractice claim, but the requirement of attaching a medical affidavit to the complaint does not apply to claims of ordinary negligence." (Citation omitted.) *Ambrose v. Saint Joseph's Hosp. of Atlanta, Inc.*, 325 Ga. App. 557, 558 (1) (754 SE2d 135) (2014). "Although complaints against professionals may state claims based on ordinary as well as professional negligence, where the allegations of negligence against a professional involve the exercise of professional skill and judgment within the professional's area of expertise, the action states professional negligence." (Citation and punctuation omitted.) *Pattman v. Mann*, 307 Ga. App. 413, 415 (701 SE2d 232) (2010). However, "[a]dministrative, clerical, or routine acts demanding no special expertise fall in the realm of simple negligence." (Citation omitted.) *Ambrose*, 325 Ga. App. at 559 (1). "Whether a complaint alleges ordinary negligence or professional malpractice is a question of law for the court." *Crisp Regional Nursing & Rehabilitation Center v. Johnson*, 258 Ga. App. 540, 542 (2) (574 SE2d 650) (2002).[9]

---

with Carter's fraud claim. See *Estate of Shannon v. Ahmed*, 304 Ga. App. 380, 384 (1) (696 SE2d 408) (2010).

[9] Therefore, "we owe no deference to the trial court's ruling and apply a de novo standard of review." *Artson, LLC v. Hudson*, 322 Ga. App. 859, 859 (747 SE2d 68) (2013).

11

Carter framed her negligence claim in terms of VistaCare employees' failure to follow the orders of Cantrell's doctor to enroll her in home health services, not hospice care. This Court has previously found that "claims that employees failed to carry out instructions and that hospitals failed to have appropriate equipment alleged ordinary negligence." (Citations omitted.) *Ambrose*, 325 Ga. App. at 559 (1). Nevertheless, "if a claim of negligence goes to the propriety of a professional decision rather than to the efficacy of conduct in the carrying out of a decision previously made, the claim sounds in professional malpractice." (Citations omitted.) Id. See also *Pattman*, 307 Ga. App. at 416; *Wellstar Health Sys., Inc. v. Painter*, 288 Ga. App. 659, 662 (655 SE2d 251) (2007).

For example, in *Painter*, the plaintiff alleged that a nurse failed to follow his doctor's orders by forcing him to take three large cups of pills, over his protests that the nurse contact his doctor. As a result, he alleged that he became woozy and went into cardiac arrest. *Painter*, 288 Ga. App. at 661. This Court found that although the nurse failed to follow the doctor's orders as to the plaintiff's medication, the underlying issue in that case involved "a medical judgment made by a nurse acting in her capacity as a nurse. She was not simply effecting a judgment previously made by another, she was exercising an independent medical judgment that required her to

12

evaluate whether [the plaintiff's] medications were correct." (Footnote omitted.) Id. at 662. Therefore, we concluded that the issues involved were "not questions of ordinary negligence, they [were] questions concerning whether the nurse deviated from the standard of care required of nurses, the resolution of which requires expert testimony and which thus requires the plaintiff to attach an expert affidavit to the complaint." Id. at 662-63.

Similarly, in *Pattman*, the plaintiff asserted that a lab technologist was negligent in failing to notify the intensive care unit when plasma arrived for a physician-ordered blood transfusion for her husband. We found that "[t]he allegation of negligence here was not that a simple phone call was not made, but that the red blood cells and other treatments were not administered to Mr. Pattman as quickly as they should or could have been, and that this failure to act timely caused Mr. Pattman's death." *Pattman*, 307 Ga. App. at 416. Accordingly, we concluded that whether the treatment ordered by the doctor was carried out in a timely fashion, "particularly given that Mr. Pattman's blood contained rare antibodies, is a question of medical judgment and the duties involved in the administration of medications and treatments constitute a professional service." Id. Thus, even though "[the lab technologist's] negligence in failing to call the ICU was not an issue involving expert

13

medical testimony, the proximate cause of the damages sought by Pattman does present a medical question controlled by expert medical testimony." (Citation and punctuation omitted.) Id. at 418. Accordingly, we found that Pattman was required to file an expert affidavit pursuant to OCGA § 9-11-9.1.

Here, even assuming that the act of allegedly failing to follow Cantrell's doctor's orders by placing Cantrell in hospice care could be construed as ordinary negligence, no damage resulted from the mere placement of Cantrell into the hospice service. Rather, the damages alleged involve injuries to Cantrell's health resulting from the medical treatment she received while in hospice care. Thus, Carter's claims assert issues involving medical judgment and the professional duties involved in providing such care to Cantrell, including the propriety of administering morphine to her. Accordingly, we agree with the trial court that Carter was required to file an expert affidavit along with her complaint, and her failure to do so bars her claim for negligence. See *Painter*, 288 Ga. App. at 663; *Pattman*, 307 Ga. App. at 418.

*Case No. A16A0303*

4. In this appeal, Carter asserts that the trial court erred in granting summary judgment on her fraud claim.

14

In granting summary judgment, the trial court found that Carter "*arguably* presented evidence that [VistaCare] knowingly made a material misrepresentation, which was justifiably relied upon by [Cantrell], with the intent to deceive," as well as evidence that the court described as "at best questionable" suggesting that damages may have resulted. However, the trial court found Carter's failure to timely respond to VistaCare's request for admissions resulted in admissions that conclusively established that VistaCare was entitled to summary judgment on the fraud claim.

VistaCare served its requests for admission on February 4, 2015, and Carter's response to the requests was due no later than March 9, 2015. See OCGA §§ 9-11-6 (e), 9-11-36 (a) (2). However, Carter did not respond to the requests until May 26, 2015, well outside the statutory time for response. As a result, the requests were deemed admitted OCGA § 9-11-36 (a) (2).[10] Carter filed a motion seeking withdrawal of the admissions, but the trial court denied the motion.

_____

[10] OCGA § 9-11-36 (a) (2) provides, in pertinent part that the matter addressed in a request "is admitted unless, within 30 days after service of the request or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney."

(a) Carter first argues that the trial court erred in failing to grant her motion to withdraw the admissions. We review the trial court's ruling on this issue for an abuse of discretion. *Parham v. Weldon*, 333 Ga. App. 744, 746 (1) (776 SE2d 826) (2015).

As provided in OCGA § 9-11-36 (b), "[a] trial court may permit withdrawal of admissions if both: (1) the presentation of the merits of the action will be subserved by the withdrawal; and (2) the party who obtained the admission fails to satisfy the court that withdrawal will prejudice him in maintaining his action or defense on the merits." *Parham*, 333 Ga. App. at 746 (1). Therefore, Carter had the burden of demonstrating that the merits of the action will be subserved by withdrawal, but VistaCare had the burden of showing that withdrawal would prejudice its defense. *Turner v. Mize*, 280 Ga. App. 256, 257 (1) (633 SE2d 641) (2006).

In order to carry her burden, Carter needed to show "the admitted requests either could have been refuted on trial of the issues by admissible evidence having a modicum of credibility or that the admitted requests were incredible on their face; and that the denials being tendered to the court in the motion to withdraw had not been offered solely for purposes of delay." *Parham*, 333 Ga. App. at 746 (1). This burden "is not perfunctorily satisfied," *Turner*, 280 Ga. App. at 257 (1)*,* and the

16

"[f]ailure to present admissible, credible evidence contradicting the admitted matters justifies the denial of the motion to withdraw." (Citation omitted.) *Brooks*, 317 Ga. App. at 267 (1). Moreover, "[i]f the movant fails to make the required showing to satisfy the first prong of the test, then the trial court is authorized to deny the motion to withdraw the admissions," and "there is no need to address the second prong." (Citation and punctuation omitted.) *Neal v. State Farm Fire & Cas. Co.*, 300 Ga. App. 68, 70 (684 SE2d 132) (2009).

In her motion to withdraw, Carter argued that her notice of appeal in Case No. A15A1773 imposed a supersedeas, suspending all discovery in the case. Carter also identified the requests she would have denied and those she would have admitted. She further asserted, without elaboration, that the evidence supporting her denial of the enumerated admissions "is contained in [her] verified Complaint, the exhibits attached to [the] Complaint, records obtained from Defendant, and Plaintiff's medical records."[11] The trial court rejected Carter's argument regarding supersedeas but failed to address the issue of whether Carter met her burden under the first prong of the test set out in OCGA § 9-11-36 (b).

---

[11] Although Carter also submitted a response to the Request for Admissions, she used the same language to identify the evidence supporting each denial of an admission, without further particularization.

Moreover, the trial court erroneously placed the burden of showing a lack of prejudice to VistaCare on Carter, rather than properly placing the burden on VistaCare to show prejudice. The trial court found that Carter had "failed to adequately address, let alone establish, that [VistaCare] would not be prejudiced by the sought-after relief."

The trial court also found that Carter had failed "to proffer any legitimate reason for the failure to respond to the discovery requests." However, "[o]ur Supreme Court has held that a party seeking withdrawal of an admission need not show 'providential cause' or 'excusable neglect' for failing to answer the requests for admission." (Citations omitted.) *Sayers v. Artistic Kitchen Design LLC*, 280 Ga. App. 223, 226 (2) (633 SE2d 619) (2006). See also *Whitemarsh Contractors v. Wells*, 249 Ga. 194, 195 (288 SE2d 198) (1982); *Cielock v. Munn*, 244 Ga. 810, 811 (262 SE2d 114) (1979). Rather, the two-prong test under OCGA § 9-11-36 (b) must be applied in determining the propriety of the motion to withdraw. Id.

Accordingly, we find that the trial court's application of an erroneous legal standard constituted an abuse of discretion. See *Sayers*, 280 Ga. App. at 227 (2). Therefore, we reverse the denial of the motion to withdraw and remand the case for the trial court to consider the motion under the appropriate standard.

(b) Similarly, because the trial court relied upon the admissions in granting summary judgment on the fraud claim, we also reverse the Final Order and remand for further proceedings following the trial court's ruling on the motion to withdraw under the proper standard.

*Judgment affirmed in Case No. A15A1773. Judgment reversed and case remanded in Case No. A16A0303. Barnes, P. J., and Ray, J., concur.*

19