**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 2, 2018**

# In the Court of Appeals of Georgia

A17A1582. ST. MARY'S HEALTH CARE SYSTEM, INC. v.
 ROACH et al.

REESE, Judge.

The Appellant, St. Mary's Health Care System, Inc. d/b/a St. Mary's Hospital, appeals from the trial court's order denying its motion for summary judgment in a negligence suit brought by Fredrick and Jacqueline Roach ("the Appellees") for the death of their son, Bryan Roach, following a visit to and discharge from the Appellant's emergency department in Athens, Georgia. The Appellant primarily contends that the Appellees' claim sounds in professional negligence which necessitates the filing of an expert affidavit. For the reasons set forth, infra, we reverse.

Viewed in favor of the Appellees as the nonmoving party,[1] the record shows that Bryan Roach, accompanied by the Appellees, arrived at the Appellant's emergency department at 10:36 p.m. on November 8, 2013, with complaints of chest pain, nausea, and fever. Chest x-rays were ordered and read by Dr. Elizabeth Smith, an emergency medicine physician on duty at the time. She reviewed the chest x-rays, finding an "enlarged heart, no obvious infiltrate[.]" Roach was discharged about two hours after he had arrived with a diagnosis of acute febrile illness and atypical chest pain. The record shows that the family was instructed to "follow up with [Roach's] primary care physician [the following] week" and to contact the emergency department if symptoms worsened.

At 7:51 a.m. on November 9, 2013, a radiologist interpreted the x-ray images of Roach, and in his report noted "[h]eart size appears normal but there is opacity in the suprahilar region on the right." The radiologist recommended a "chest CT . . . done with IV contrast. If the patient has had prior chest CTs that might demonstrate this finding they should be obtained prior to obtaining . . . a chest CT[.]" At 11:44 a.m. on the same day, less than 12 hours after being discharged, emergency response

---

[1] *Crisp Regional Nursing & Rehabilitation Center v. Johnson*, 258 Ga. App. 540, 541 (1) (574 SE2d 650) (2002).

2

personnel received a call that Roach collapsed at home. Upon arrival of emergency response personnel, Roach was transported, via ambulance, to the Appellant's hospital. Efforts to revive him were unsuccessful, and Roach was declared deceased at 1:39 p.m. An autopsy report listed Roach's cause of death resulting from "[h]emopericardium secondary to asending aortic dissection[.]"

The Appellees initially filed a medical malpractice action against Athens-Clarke Emergency Specialists, P. C., Dr. Smith, and a physician assistant, and attached an expert affidavit to the complaint, pursuant to OCGA § 9-11-9.1. According to the affidavit, Roach's "aortic dissection would have been visible on a contrast CT scan at any point after his arrival" at the Appellant's hospital.

Later, the Appellees amended their complaint to add the Appellant. In their amended complaint, the Appellees alleged that the Appellant's imaging interpretation system provided that x-rays ordered after 11:00 p.m. on a Friday night would not be interpreted by a radiologist until the next morning, unlike those ordered during regular hours. The Appellees did not attach an additional expert affidavit addressing the Appellant's alleged negligence claims to their amended complaint.

The record shows that, in 2009, the Appellant entered into a "Radiology Service Agreement" with Athens Radiology Services, P.C., a group practice of

3

physicians, specializing in radiology ("Radiology Group"). The agreement specifically provided that its purpose was to serve "the best interests of quality patient care" and to ensure the "effective and efficient delivery of health care at the Hospital[.]" The parties agreed to the following: (1) the Radiology Group would provide in-person or on-call services 24 hours per day, 365 days a year; (2) the Radiology Group could contract with a teleradiology group or physician to preliminarily interpret "CT, MRI, and Ultrasound studies" between the hours of midnight and 7:00 a.m. Monday through Thursday and 11:00 p.m. through 8:00 a.m. Friday through Sunday [;]" (3) the Radiology Group would have an on-call radiologist who would also be available during those times; and (4) the on-call radiologist would be available for a consultation whenever it was requested by a medical staff physician, with the consultation being conducted either via teleradiology or by the radiologist physically returning to the hospital if the circumstances so required.

The Appellant filed a motion to dismiss, arguing that the Appellees' claims against it were based on professional negligence and thus, required an expert affidavit pursuant to OCGA § 9-11-9.1. The trial court denied the Appellant's motion to dismiss, and discovery ensued.

4

In her deposition, Dr. Smith confirmed that the Appellant's radiology policy provided that every x-ray image would be reviewed and interpreted by a radiologist, although, as in this case, x-rays performed after hours would not be reviewed until the next day. She also testified that she could have gotten a radiology consultation in Roach's case on the night of his emergency room visit by contacting the on-call radiologist to have the x-rays interpreted immediately. She explained, however, that she did not seek the consult because she felt "comfortable" with her ability to accurately read and interpret Roach's chest film.

The Appellant filed a motion for summary judgment asserting that: (1) the Appellees' claims against it were based on professional negligence; (2) there was no evidence that the Appellant's services were "unreasonable"; and (3) the Appellees failed to show that any act or omission by the Appellant caused Roach's death. After a hearing, the trial court denied the Appellant's motion for summary judgment, ruling that the Appellees' claims against the Appellant sounded in ordinary negligence, because the Appellant's radiology policy at issue "was the product of business negotiations between the [Appellant] and Athens Radiology to provide exclusive radiology services" and the resulting contract showed "no indication that physicians were involved in the contract negotiations."

This Court granted the Appellant's application for interlocutory review, and this appeal follows.

This Court reviews a trial court's ruling on a motion for summary judgment de novo.[2] "To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law."[3] With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

1. The Appellant contends that the trial court erred in finding that the Appellees' claims against it sound in ordinary, not professional, negligence, whereas the Appellees argue that entering the "Radiology Services Agreement" by the Appellant sounded in ordinary negligence. We agree that the trial court erred in finding that the Appellees' claims fall under ordinary negligence and reverse the denial of the Appellant's motion for summary judgment.

OCGA § 9-11-9.1 (a) provides, in relevant part,

---

[2] See *Crisp Regional Nursing*, 258 Ga. App. at 541 (1) (citation omitted).

[3] *Munroe v. Universal Health Svcs.*, 277 Ga. 861, 864 (2) (596 SE2d 604) (2004) (citation and punctuation omitted).

In any action for damages alleging professional malpractice[,] . . . the plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim.

This Court has found that "[a]lthough complaints against professionals may state claims based on ordinary as well as professional negligence, the complaint's characterization of claims as stating professional or ordinary negligence does not control."[4] "Where the professional's alleged negligence requires the exercise of professional skill and judgment[5] to comply with a standard of conduct within the professional's area of expertise, the action states professional negligence."[6] Therefore, negligence allegations that do not involve the exercise of professional skill

---

[4] *Bardo v. Liss*, 273 Ga. App. 103, 104 (1) (614 SE2d 101) (2005) (citation omitted).

[5] See *Carter v. Cornwell*, 338 Ga. App. 662, 663 (791 SE2d 447) (2016) ("Medical judgments are decisions which normally require the evaluation of the medical condition of a particular patient and, therefore, the application of professional knowledge, skill, and experience.") (citation and punctuation omitted).

[6] *Bardo*, 273 Ga. App. at 104 (1) (citation omitted).

7

and judgment state a claim for ordinary negligence.[7] Whether a complaint sounds in ordinary or professional negligence is a question of law for the court to decide.[8]

Thus, under OCGA § 9-11-9.1, a plaintiff must "attach to the complaint an expert's affidavit supporting his malpractice claim, but the requirement of attaching a medical affidavit to the complaint does not apply to claims of ordinary negligence."[9] In contrast, "administrative, clerical, or routine acts demanding no special expertise fall in the realm of simple negligence."[10]

In its decision, the trial court distinguished *Bradway v. American National Red Cross*,[11] which the Appellant had cited in support of its summary judgment motion. In *Bradway*, the allegedly negligent conduct at issue was a blood bank's failure to obtain, through appropriate screening procedures and identify, from the potential donor's medical history, the information required to determine whether the donor's

---

[7] See *MCG Health v. Casey*, 269 Ga. App. 125, 128 (603 SE2d 438) (2004).

[8] See *Crisp Regional Nursing*, 258 Ga. App. at 542 (2).

[9] *Carter v. VistaCare, LLC*, 335 Ga. App. 616, 621 (3) (782 SE2d 678) (2016) (citation and punctuation omitted).

[10] Id. (citation and punctuation omitted).

[11] 263 Ga. 19 (426 SE2d 849) (1993).

blood was likely infected with the Human Immunodeficiency Virus ("HIV").[12] The screening procedures were developed by physicians and carried out by licensed nurses.[13] In finding that the claim against the blood bank sounded in professional negligence, the Supreme Court of Georgia found that the injury at issue in the complaint stemmed from the "alleged failures of the [screening] questions to provide for effective elimination of high risk donors."[14]

In the present case, the Appellees' complaint raises questions as to whether the Appellant's radiology policy should have required a radiologist to be on-site at all hours to review and interpret x-rays in emergency cases; whether the Appellant's radiology policy should have mandated immediate review of all x-rays by a radiologist; and whether the Appellant's radiology policy improperly allowed an emergency room physician, regardless of training and experience, to accurately interpret x-rays and to discharge a patient based solely on that physician's opinion, independent of further review by a radiologist.

---

[12] Id. at 20.

[13] Id. at 21.

[14] Id. at 22-23.

As this Court has previously explained, "if a claim of negligence goes to the propriety of a professional decision rather than to the efficacy of conduct in the carrying out of a decision previously made, the claim sounds in professional malpractice."[15] The evidence established that the Appellant's hospital policy allowed for an immediate consult with a radiologist, but Dr. Smith exercised her medical judgment when she decided that one was not necessary.[16] Therefore, the Appellant's decision on how and when it would provide a radiologist to interpret x-rays of its patients was not a purely administrative act, but involved the exercise of professional knowledge and judgment.[17]

Based on the foregoing, we find that this is a professional negligence case because the Appellees' argument is that the very execution and implementation of the radiology agreement was negligent. The only way to properly allege and ultimately

---

[15] *Carter v. VistaCare*, 335 Ga. App. at 621 (3) (citations and punctuation omitted).

[16] See *Carter v. Cornwell*, 338 Ga. App. at 663.

[17] See *Stafford-Fox*, 282 Ga. App. 667, 671 (2) (639 SE2d 610) (2006) (The failure of a physician to implement or follow proper procedures to ensure that he reviewed and acted upon test results was "not [a] purely administrative act[ ], but involve[d] the exercise of medical knowledge, skill or judgment in diagnosing a medical condition[.]") (punctuation omitted).

establish the Appellant's negligence, is with expert testimony explaining how the "Radiology Service Agreement," which does not require the Appellant to have a radiologist on-site at all times, falls below the standard of care.[18] As such, it was error for the trial court to deny the Appellant's motion for summary judgment. Therefore, we reverse.

2. In light of our holding in Division 1, supra, we need not reach the Appellant's remaining claims of error.

*Judgment reversed. Miller, P. J., and Doyle, P. J., concur.*

---

[18] See OCGA § 9-11-9.1 (a).